[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 451 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 452 
In Moss v. McCullough (7 Barb., 279), the supreme court in the fourth district decided that in an action against a stockholder of the Rossie Lead Mining Company to recover a debt contracted by the company, a judgment previously recovered by the plaintiff against the corporation upon the same demand, wasprima facie evidence of a debt against the defendant; but subject to be impeached for collusion or mistake. If that case was rightly decided, as I think it was, the objection to the plaintiff's right of recovery, *Page 453 
founded on a failure to prove a debt against the corporation, was untenable.
But it is unnecessary to rest this case upon the authority ofMoss v. McCullough. That case had not been decided at the time this cause was tried. In the present action, the plaintiff rested his right to recover upon evidence given on the trial, satisfactory to the court below, of the indebtedness of the corporation, by other evidence than the record of the recovery.
The first inquiry, therefore, is, whether the evidence thus given would have entitled the plaintiff to recover, had the action been brought against the corporation. The production and proof of the execution of the notes by the proper officers of the company was, prima facie, sufficient for that purpose. It was unnecessary, in the first instance, to show the consideration of the notes. It will be shown presently, that a corporation, not restricted by its charter, has the same right to give notes as evidence of its indebtedness that an individual possesses.
The purchase of the property for which the notes in this case were given, was made by the directors. Although this fact is not shown by the minutes of the secretary, yet it is established, beyond controversy, that the directors as well as leading stockholders had the subject of the purchase under consideration for weeks. "It was a purchase," says Mr. Vilas, one of the directors, "made by the directors on great deliberation. The directors were unanimously in favor of the purchase, but as the transaction was one of great importance, they consulted the stockholders in relation to it, and all who were consulted concurred in advising it to be made." The omission to make an entry in the book of minutes, of the time and place when and where the meeting was held, and who presided at it, does not invalidate the purchase or raise a doubt as to the fact that it was made. The defendant was the managing agent of the company, and president of the board, and he, in fact, executed the necessary papers *Page 454 
by which the purchase was completed. The direct evidence to prove the contract is quite strong, and was not brought into doubt by any opposing facts.
The acts of corporations may be proved in the same way as the acts of individuals. If there be no record evidence, they may be proved by the testimony of witnesses; and even where no direct evidence of such acts can be given, facts and circumstances may be proved from which the acts may be inferred. The tendency of the modern decisions is to assimulate the actions, rights, duties and liabilities of corporations to those of individuals. (Bankof the United States v. Dandridge, 12 Wheat., 64; Bank ofColumbia v. Patterson's admrs., 7 Cranch, 299; Trustees v.Cagger, 6 Barb., 576, 58; Perkins v. Washington InsuranceCompany, 4 Cow., 645; Munn v. Commission Company, 15J.R., 44, 55; Conro v. Port Henry Iron Company, 12 Barb.,
27, 53.) Moss Knapp made an absolute conveyance in presenti
of all the smelting property to the corporation, and the proper corporate officers gave their notes for the price, and took immediate possession of all the property, and used and employed it in its corporate business of smelting lead. This act of payment and taking possession was an unequivocal act of ratification. Subsequent ratification is equivalent to previous authority. (Moss v. Rossie Lead Mining Company, 5 Hill,
137; Clark's Executors v. Van Riemsdyk, 9 Cranch, 153;Conro v. Port Henry Iron Company, 12 Barb., 27, 53;Corning v. Southland, 3 Hill, 552.)
The purchase of the property of Moss Knapp for which the notes in question was given was within the scope of the legitimate business of the company. The business for which the company was incorporated was "for the purpose of raising and smelting lead ore at Rossie." Had the company embarked at the beginning in both branches of the business, no doubt can be entertained that they would have been empowered to adopt the proper means, and to make the requisite purchases for accomplishing those objects. (Act of *Page 455 
1837, 441, § 1; 1 R.S., 599, § 1.) The officers of the company saw fit in the beginning to restrict their operation to one branch of the business for which they were incorporated, that of raising the ore, and to employ Moss Knapp to perform the business of smelting. At length they judged it for their interest to purchase the works of Moss Knapp, and to carry on both branches of business themselves. They did not embark in any other business than that for which they were incorporated. The property they purchased had been got together by Moss Knapp for the smelting business and nothing else; and was necessary to carry on that business. It was situate in a new country, at a distance from any village, and required for the accommodation of their hands the erection of suitable habitations. The country was a wilderness and had to be cleared. The men and animals employed by them had to be supported. If they raised a little grain on their clearings it must be harvested and prepared for food, or it would be lost. The few implements of husbandry which had been procured by Moss Knapp were of no value to be removed and were sold in a lump with the residue of the property. They were mere incidents, and whether added to the inventory or omited would not eventually have varied the result. One of the shanties had been used by Moss Knapp as a school house for the children of their men. Whether it was so used at the time of the purchase, does not appear. It would have been no objection to the validity of the sale had it been at that time devoted to so laudable an object. There was no attempt on the part of this company to divert their fund from the legitimate objects of the charter, to the support and endowment of literary institutions, or for agricultural purposes.
The company had the same right to compromise and settle the claim which Moss Knapp had against them, as to pay or to compromise any other debt. And they had the same right to do either, that a natural person possesses in relation to his outstanding liabilities. *Page 456 
The powers conferred on the corporation by the charter were broad enough to authorize them to transport their lead to market. It could not have been supposed by the legislature that the ore when smelted should remain in the woods of Rossie until purchasers came to buy it. The company had a right to adopt any reasonable mode of transporting it to market. It was not shown that the agreement to carry out the stipulations of Moss Knapp with Fitzhugh Co., with regard to transportation, was disadvantageous to the company. It was probably greatly for their interest. If they could contract to send one ton of lead to market, they could contract for sending to market by a single company, the whole produce of the season. An arrangement on so large a scale was doubtless more advantageous than a multitude of contracts. The company did not purchase the boats but they remained the property of Moss Knapp, in the hands of Fitzhugh 
Co., to whom they were rented, and were returned to their owners on the expiration of the term.
The exception taken to the ruling of the judge on this part of the subject was quite frivolous. The plaintiff's counsel did not ask the witness, Knapp a question the answer to which would tend to vary the written contract. And yet the defendant's counsel objected to any evidence to vary the written contract on this subject. The court overruled the objection, not because evidence tending to vary a written contract was admissible, but because the objection was misplaced and had nothing to rest upon. The subsequent testimony discloses that no evidence, such as was anticipated by the objection, was given.
If the corporation could make the purchase, as it has been shown they could, they might lawfully make promissory notes on time for the price. An ability to make a contract implies an ability to make a promissory note. Indeed the statute "of promissory notes and bills of exchange," expressly includes corporations, having a capacity to make contracts, among the persons who may make notes in writing. *Page 457 
(1 R.S., 768, §§ 1, 2, 3.) No question is better settled upon authority, than that a corporation, not prohibited by law from doing so, and without any express power in its charter for that purpose, may make a negotiable promissory note payable either at a future day, or upon demand when such note is given for any of the legitimate purposes for which the company was incorporated. (Attorney-General v. Life and Fire Insurance Company, 9Paige, 470; Mott v. Hicks, 1 Cowen, 513; Barber v.Mechanics' Insurance Company, 3 Wend., 94; Moss v.Oakley, 2 Hill, 265; Safford v. Wyckoff, 4 Hill, 442;Kelley v. The Mayor of Brooklyn, Ib., 263; Moss v. TheRossie Lead Mining Company, 5 Hill, 137; Conro v. The PortHenry Iron Company, 12 Barb., 27.) The ancient notion that a corporation aggregate could only express its assent by its corporate seal has long since yielded to the necessities and conveniences of business. The usual mode of contracting is through the intervention of agents, duly authorized for that purpose. These are either specially appointed, or, as is more common, the general officers and boards, as directors, managers,c., elected by the members, but usually deriving their power from the charter. (Angell Ames on Corporations, ch. 8;passim, Ib., 203.) The charter of the Rossie Lead Mining Company authorized its business and affairs to be conducted by five directors, whom it appointed by name to hold their offices till others were elected. And the directors were required to appoint one of their number president. The notes in this case were executed by the proper officers of the corporation, were made upon a sufficient consideration and were legally obligatory upon the company.
The defendant was an original stockholder, and so continued till after the making of the notes in question. He was a director named in the charter and was subsequently elected by the stockholders, and was the duly elected president during the whole time. The plaintiff, having exhausted his remedy against the corporation, was entitled to prosecute *Page 458 
the individual stockholder according to the 9th section of the act. He proved enough, upon well settled principles, to entitle him to recover.
No error was committed by the judge in receiving evidence of other notes given by the proper officers of the company. Such evidence tended to show the authority of the officers to contract. Followed up by the acquiescence of the directors, and the subsequent payment of the notes, it would have afforded conclusive evidence of such authority. The defendant's objection was not to the non-production of the notes; at least that was not specified as the objection. It seems rather to have been to the evidence generally. But admitting that the objection was sufficiently specific, and that it extended to the evidence generally, and to the non-production of the notes also, it was in either case insufficient. This action was not brought upon those notes. Their existence was a mere collateral fact tending to show the usage of the company. If they had been paid and taken up, the presumption was that they were in the hands of the defendant or some other officer of the company; and the objection was not put upon the ground that no notice to produce them had been served. (Clark v. Farmers' Manufacturing Company, 15 Wend., 256;The Troy Turnpike v. McChesney, 21 Id., 296; TheCommercial Bank of Buffalo v. Kortright, 22 Wend., 348.)
There is no force in the objection to the admissibility of the letter of Mr. Judson, the secretary, addressed to Lewis Moss, apprising the latter of the resolution of the stockholders, of October, 1839. The same facts were proved by Mr. Judson without objection, immediately afterwards, and thus the exception was waived. But the testimony was admissible, as it tended to show a purchase by the directors of the smelting works of Moss Knapp. On its face, it contemplated further action of the officers of the company, before the bargain was consummated. It afforded one link, *Page 459 
and an important one, in the chain of proof. The objection was not urged on the argument in this court.
The indorser of a note made by the corporation is a creditor within the meaning of the 9th section of the statute. This was so ruled in Moss v. Oakley (2 Hill, 265). The notion which at one time prevailed, that the stockholders were guarantors or sureties of the corporation, has been repudiated by this court. (Corning v. McCullough, 1 Comst., 47.) The stockholders are partners, but their liability in that character is qualified by the charter, and postponed till the inability of the corporation to pay has been tested by the return of an execution unsatisfied.
The foregoing view of this case covers every objection, and shows that the plaintiff was entitled to recover. But there is another ground on which the defendant is liable. The Rossie Lead Mining Company was a private as distinguished from a public corporation. It was so treated on the trial, and the act of incorporation was given in evidence by the plaintiff. Moss 
Knapp were not therefore chargeable with notice of the extent of its corporate powers. The defendant signed the contract and the notes as president of the corporation. He thus affirmed the transaction to have been authorized by the corporation; and to be such a one as they had a right to enter into. On well settled principles, he is estopped to assert its invalidity. The act on his part amounts to an assertion that the corporation had a right to make the purchase, and that the proper managing agents of the corporation had authorized it to be made. Moss Knapp confided in those representations and parted with their property. To allow the defendant now to contest the legality of the transaction would work the greatest injustice to Moss Knapp and enable the defendant to make a profit out of his own wrong. (ThePresbyterian Congregation of Salem v. Williams, 9 Wend.,
147; Welland Canal Company v. Hathaway, 8 Wend., 483;Dyer v. Odell, 3 Hill, 215; Whelan v. Whelan, 3Cowen, 537; Frost v. Saratoga Mutual *Page 460 Insurance Company, 5 Denio, 154; Watson v. McLaren, 19Wend., 557.) The plaintiff stands in the same position as Moss Knapp, and can equally with them insist on that estoppel.
On the argument the greatest stress was laid upon the objection that the corporation had no right to make the purchase of the smelting works; and certainly not of the building called a school-house, and the implements of husbandry mentioned in the inventory. A few observations will be added on this branch of the case.
It is conceded that, in addition to the powers enumerated in the Revised Statutes, and those expressly granted by its charter or act of incorporation, no corporation can possess or exercise any corporate powers except such as shall be necessary to the exercise of the powers so enumerated and given. This principle is expressly enacted. (2 R.S., 600, § 3.) Had the corporation subscribed $15,000 for the erection of a chapel to Union College, or purchased a farm for an agricultural seminary, or a wholesale store in the city of New York for the general purposes of trade, it would not have been denied that those acts were unauthorized by the charter. In a case so strongly marked as the one supposed, the judge at the circuit would have been authorized to nonsuit a plaintiff, if the sustaining of the action required the acknowledgment of the validity of those acts, or to direct a verdict in conformity to the law. But where a case is not so strongly marked, when the property purchased falls within the general scope of the charter, and the only objection is that some articles, apparently unnecessary, are included, the good faith of the purchaser should be submitted as a question of fact to the jury. The corporation should not be permitted to repudiate the purchase after acquiring the plaintiff's property, except under circumstances which would justify an individual to repudiate it. The individual stockholders are in no better plight than the corporation. *Page 461 
The defendant did not ask to submit the question to the jury, whether the property purchased was adapted to the legitimate business of the corporation, but he called upon the court to nonsuit the plaintiff upon the ground, among others, that the debt for which the notes were given was not contracted in the ordinary and legitimate business of the said company, or within their corporate powers. He thus called upon the court to decide, as matter of law, what was the appropriate province of the jury to determine under suitable instructions. The objection to the purchase was not of such a character that the court could, as matter of law, pronounce it void.
If we compare the transaction in question with that of other corporations, the validity of which has never been doubted, the legality of the recovery in this case will be still more obvious. By the general railroad act the companies formed under it are to lay out their road not exceeding six rods in width; and for the purpose of cuttings and embankments, to take as much more land as is necessary. (Laws of 1850, 224.) They are also, by the same act, authorized to purchase, hold and use all such real estate, and other property as may be necessary for the construction and maintenance of their railroad, and the stations and other accommodations necessary to accomplish the objects of the incorporation. (Ib.) The statute fixes no other limit to the amount of real estate they may take and purchase. Suppose that a school-house should stand on the land embraced within their lines, are they prohibited from purchasing the land, because the education of youth is not within the powers conferred by their charter? Could they for this reason resist a recovery upon a note given for the purchase money? Would a deed to the Utica and Schenectady Railroad Company, of the premises on which their tracks and station-house, c, in the village of Amsterdam are placed, be void, if in addition to the general description of the land by its boundaries, it should be added, "being the land on which *Page 462 
the school-house of District No. 10, in Amsterdam, is situated."
In these and similar cases, it would, in my judgment, be a question for the jury, whether the real estate bought was bonafide purchased for the legitimate purposes of the road, or as an incident to the carrying on of a school.
In the acquisition of land for a station or a depot, the company are restricted to no limits except their necessities. Should a railroad corporation, under pretence of procuring land for a depot, purchase a thousand acres of land and lay it out into city or village lots, to be sold on speculation, most jurors would probably find, under suitable instructions, that the corporation had transcended its powers. But suppose the quantity purchased was actually enclosed for a depot and occupied as such, would the purchase be invalidated because men might differ as to the precise size of the building required by the necessities of business. If a witness could be found who would swear that the depot at Rouse's Point, is ten feet longer than is required by present wants, could the Northern Railroad hold the ground without payment, because the company bought ten feet more land than they actually needed? Must the building revert to the grantors of the land, or be forfeited to the state? Would not the question always be one of fact, whether, all things being considered, the purchase was not made in good faith, for the purposes contemplated by the charter?
A case must be strongly marked which would warrant a judge in pronouncing a purchase void, without submitting it to the consideration of a jury.
On every ground, therefore, I think the judgment should be affirmed.
RUGGLES, MASON and MORSE, Js., concurred.
JEWETT, GARDINER, JOHNSON and TAGGART, Js., were for reversal. *Page 463 
This being the second re-argument of the cause, and a majority of the judges not agreeing, by force of the statute,
Judgment affirmed.