LAWRENCE and others *vs.* GEBHARD.

If the power of making and indorsing promissory notes for and in the name of a corporation is not expressly conferred upon its agent and attorney, by the instrument by which he is appointed, general words, at the conclusion thereof, authorizing him "to do all other acts and things for and in behalf of the said company that he may deem proper to further and protect its interests," cannot have that effect. SUTHERLAND, J. dissented.

Proof that the agent of a corporation is in the habit of giving notes for the company is inadmissible, unless accompanied by proof that the company had some knowledge that the agent was in the practice of giving notes in its name.

The fact that such agent is a director gives him no authority, except when acting as a member of the board; unless there is some by-law conferring power upon him.

THIS action was tried May 14, 1862, before the court at the circuit, the parties having waived a jury. The action was commenced against the defendant as a stockholder of the Saint Anthony Falls Water Power Company, located in the state of Minnesota, to recover $2455.34, being the amount of two promissory notes; one for $543.27, dated St. Anthony Falls, February 1, 1859, signed as follows: "St. Anthony Falls Water Power Company, by Richard Chute, agent and

attorney in fact;" the other for $1908.57, dated St. Anthony, May 5, 1859, made payable to the order of said corporation, and signed and indorsed "St. Anthony Falls Water Power Company, by Richard Chute, agent." The charter of the company provides that "each of the stockholders of said company shall be personally liable for the debts of said company to an amount equal to the amount of the capital stock held by said stockholders." The defendant was a stockholder in said company to the amount of $80,000 from July 4, 1856. The note for $543.27 was a renewal of a note for $522, dated August 31, 1858, for goods sold said company by William Garcelon & Co. These goods were sold from October 1, 1857, to August, 1858. The note for $1908.57, was a renewal of a note for $1829.20, dated January 5, 1859, which last note was given in renewal of a note dated November 14, 1857. This note was given for merchandize sold and delivered about that time.

The charter authorizes the company to appoint a general agent, and provides that the company shall give the agent a power of attorney, and if it "be general, the said company shall be bound by the acts of said agent to whatever extent said agent assumes to act." The company, by its stockholders, in the manner prescribed by the charter, April 26, 1856, appointed Richard Chute general agent, and passed a resolution giving said agent full and complete authority to do any and all acts he might deem for the interest of said company, except that he should not sell the water power of said company; and instructed and authorized the president and directors to make, execute and deliver to him a power of attorney, granting him "full power and authority to do all things contemplated by this resolution." The defendant gave his written consent to this resolution. The company in pursuance of said resolution duly executed a power of attorney to said agent, dated May 1, 1856, by which he was constituted and appointed "the true and lawful agent and attorney of the St. Anthony Water Power Company, for and in its name to

take charge of, manage and transact all business affairs and concerns connected with the real and personal estate and property, water right, privileges and appurtenances belonging to the said St. Anthony Falls Water Power Company, wherever situated, that they do now or may hereafter own, and in its name to contract for the improvement or sale and delivery, or for the leasing or letting of said real estate and personal property, and to collect and receive the consideration money of such sale or sales, and the income arising from such leasing or letting, and full receipts, acquittances and discharges for the same to give, and in the name of said company to commence and prosecute to final adjudication, or to compromise or terminate all suits and proceedings, whether at law or in equity, that he may judge necessary to maintain in relation to its real estate and personal property, and to collect and receive the proceeds of such suits and proceedings, and full receipts and discharges for the same to execute and deliver ; and upon the sale of any of the real or personal estate, or property of said company, to sign, seal, execute, acknowledge and deliver, for and in behalf of said company, and as their agent and attorney, all or any necessary or proper contracts, deeds, conveyances or other instruments, and to insert in such deed or deeds the full covenants and warranty usually inserted in the western states and territories of the United States, and generally to do all other acts and things for and in behalf of said company that he may deem proper to further and protect its interests." Provided, however, that he should not sell the water power. The consideration of the note for $543.27, was merchandise, sold and delivered to the said company by Wm. Garcelon & Co. The consideration of the note for $1908.57, was for merchandize, sold and delivered under substantially the following circumstances, viz : Said company, owning a large tract of land at St. Anthony Falls, desired to have a first class hotel erected in the middle thereof, in order to increase the value of the company's lands, and to induce parties to purchase lots of

said company and erect buildings thereon. The company assumed an agreement, dated November 10, 1855, made with James M. Winslow, as to the erection of said hotel, which had been made by the defendant and the other stockholders prior to said company being chartered. The company expecting to derive a large benefit from the successful maintenance of said hotel, had subscribed, together with several citizens, for the furnishing and opening of said hotel. In 1857 the hotel had been completed, but not furnished, and Winslow leased the same to U. V. Mattison & Brother. Mattison went east and purchased furniture, &c. including the amount for which said $1908.57 note was given. The vendors came on with the furniture purchased, to Prairie du Chien, and refused to deliver the furniture unless the same was paid for or payment secured. As an inducement for Mattison to go east and purchase furniture, the company and the citizens made a subscription of $10,000, said company agreeing to pay $5000 thereof, pursuant to an agreement by a majority of the directors. It was found, after the said furniture arrived at Prairie du Chien, that the Mattisons could not pay for the goods and open the hotel so as to comply with the conditions of the $10,000 subscription, and consequently the goods would be returned to the eastern sellers; and in order to induce the eastern sellers to deliver the goods, the company made a further subscription of $1000, and gave the note in question in part payment of their said subscription of $6000. Richard Chute deemed this for the best interests of said company. The company had contributed the blocks of ground on which the hotel was built and $4150 in money to induce and insure the building of the hotel. The purchasing of the furniture and opening said hotel, was but carrying out one of the great aims and objects of this company.

Richard Chute was examined as a witness, under a commission. Being asked whether he, as agent of said company, under said power of attorney, had made or given any other promissory notes for said company, and whether it had been

his practice to give notes for said company, the defendant's counsel objected to the interrogatory as irrelevant. The court sustained the objection and excluded the interrogatory, and the plaintiffs excepted.

The judge before whom the cause was tried found that Chute had no power or authority to make or indorse the notes in suit in the name of, or for the company, so as to make the defendant liable for their payment or consideration, as a stockholder, and that said notes and their several renewals were made and indorsed by Chute, professing to act as the company's agent without any authority given him by the board of directors.

And as a conclusion of law, he found that the defendant was entitled to judgment against the plaintiffs, with costs. Judgment being entered accordingly, the plaintiffs appealed.

*Solomon L. Hull,* for the appellants.

*J. W. Gerard* and *T. C. T. Buckley,* for the respondent.

LEONARD, J. The judgment should be affirmed. 1st. The power of attorney does not authorize the making of notes. There is no general power given to the agent, except in respect to the matters previously specified.

2d. The judge was correct in refusing to allow the plaintiffs to prove that the agent was in the habit of giving notes for the company. The plaintiffs should have accompanied it with an offer to prove that the company had some knowledge that the agent was in the practice of giving notes in the name of the company—otherwise the proof offered was immaterial.

The fact that Chute was a director gave him no authority, except when acting as a member of the board, unless there was some by-law conferring power on him.

CLERKE, J. The case of the *British Bank* v. *Turquand,* (6 *Ellis & Blackburn,* 327 ; 88 *Eng. Com. L. R.* 325,) referred

to in the opinion of Judge Sutherland, is totally different from the case before us. In that case, the deed of settlement, organizing the company of which the defendant was the manager, allowed the directors to borrow on bond such sum or sums of money as should from time to time, by a resolution passed at a general meeting of the company, be authorized to be borrowed. The directors accordingly borrowed on bond the amount for which the representative of the company was sued; but the plea set up that there had been no general resolution of the company authorizing the making of the bond. On demurrer, the court held that the dealings with such companies are not like dealings with other partnerships, and that the parties dealing with them are bound to read the statute and the deed of settlement. But they are not bound to do more. The lender, on reading the deed of settlement, would find not a prohibition from borrowing, but a permission to do so, on certain conditions. Finding that the authority might be made complete by a resolution, he would have a right to infer the fact of a resolution authorizing that which on the face of the document appeared to be legitimately done. In the case under consideration, the charter of the St. Anthony Water Falls Company does not allow any agent who may act for them to make notes, binding the company, for any purpose which he may deem proper, whether it is or is not within the specific powers confided to him. The question here is as to the extent of the power given to the agent; if we do not find that this unlimited power of signing notes is specified, the general words at the conclusion of the instrument, constituting him agent, cannot have that effect.

I agree with Judge Leonard, in thinking that the judgment should be affirmed with costs.

SUTHERLAND, J. (dissenting.) First, had the corporation power to make the notes? By the first section of the act of incorporation, the corporation, by the name and style of

"The Saint Anthony Falls Water Company," are expressly authorized "to have, purchase, receive, possess, sell, convey, and enjoy real and personal estate ; to sue and be sued, plead and be impleaded, answer and be answered unto, defend and be defended in courts of record and elsewhere, and to do any and all acts that the members thereof might or could lawfully do as individuals ; and shall have and enjoy all proper remedies at law and equity to secure and protect them in the exercise and use of the rights and privileges, and of the performance of the duties herein granted and enjoined, and to prevent all invasion thereof, or interruption in exercising and performing the same," &c.

It is a most extraordinary and significant fact, and one to be particularly noted on this question of power, as well as other questions in the case, that the purpose, or business, for which the corporation was created is not defined, or even mentioned, in this section, nor in any other part or portion of the act of incorporation. I think the counsel for the respondent is mistaken in supposing that the ninth section defines or limits the purpose or business for which the corporation was created. That section authorizes the corporators "for the purpose of the improvement of the water power, above and below the Falls of St. Anthony in the Mississippi river, to maintain the present dams," &c. This is only saying, in substance, that if the corporators should undertake the improvement of the water power, &c. they shall have power in carrying on that business, to do the acts or things particularly mentioned in the section. I do not think that this section can be considered as limiting the business of the corporation to the improvement of the water power, &c. or of any water powers, owned, or to be owned, by the corporators.

I cannot find in the act of incorporation any limitation or qualification of the extraordinary general grant of power by the first section, except such as may be contained in, or implied by, the two provisos at the end of the ninth section ;

Lawrence *v.* Gebhard.

the first providing that in improving the water power, or water powers, "the said corporation should give free passage for all loose logs," &c.; and the second, "that nothing herein contained shall be so construed as to authorize said corporation to interfere with the rights of property of any other person or persons whatever;" and I think, from the whole act, it is fair to infer that the ninth section was inserted in the act mainly for the purpose of expressly qualifying the extraordinary general grant of power to the extent implied by these provisos, particularly the first.

I think it will be difficult for any one, after a careful reading of the act of incorporation, to say that the corporation had not power to engage in any business, or do any act or thing that the members of it might or could do as individuals; that is, any lawful business or any lawful act or thing, except that, in improving its water power or water powers on its property at the Falls of St. Anthony, it should be subject to the restrictions contained in, or implied by, the two provisos. If the corporation had undertaken to run or navigate a line of balloons from the Falls of St. Anthony to San Francisco, and the notes on which this action is brought had been given by it for gas to fill them, (I mean the balloons,) I do not see any thing on the face of its charter which could justify the corporation in saying that it had not power to buy the gas or make the notes.

Considering that the charter does not specify the purpose or object of the corporation, and considering the extraordinary express general grant of power, cases like *Mott* v. *Hicks*, (1 *Cowen*, 513,) *Baker* v. *Mechanic Fire Insurance Company*, (3 *Wend.* 94,) and *Moss* v. *Averell*, (10 *N. Y. Rep.* 449,) holding that corporations, unless expressly prohibited, have implied power to give and indorse promissory notes for the purpose of carrying on their legitimate charter business, can hardly be said to be pertinent on the question of power in this case; certainly they are not necessary to show that the St. Anthony Falls Water Power Company, on the face

of its charter, had power to make the notes in question. As it would probably be difficult to find any precedent for such an extraordinary act of incorporation, it would probably be difficult to find any reported case on a like question of power.

Second. Had Richard Chute, the agent, as between him and the corporation, power to make the notes for the corporation? Another extraordinary feature of the charter of the corporation is, that upon its organization, by the fifth section of the act, the stockholders were expressly authorized to elect an agent for the transaction of the business of the company, who should reside within the territory of Minnesota, and have such power and authority to transact the business of the company as it should delegate and authorize; and it was, among other things, also provided by this section, that if the power of attorney to the agent was general, the company should be bound to whatever extent the agent should assume to act. Chute was duly elected agent under the provisions of the charter, and a resolution passed as to the powers to be delegated to him as such agent, by which resolution he was to have full and complete authority "to do any and all acts of whatsoever nature, in behalf of the St. Anthony Falls Water Power Company, which he deems best for its interests, or that may be necessary to protect the same, except that he shall not be authorized to sell the fee simple to any water power owned or that may hereafter be acquired by said company."

The power of attorney which was given to Chute in pursuance of the resolution, after authorizing him "to take charge of, manage and transact all business affairs and concerns, connected with the real and personal estate and property, water right, privileges and appurtenances belonging to the Saint Anthony Falls Water Power Company, wherever situate, that they do now or may hereafter own," to contract for the improvement and sale and leasing thereof, to receive the consideration money of the sales and the income of the property, and to execute and deliver for the company all ne-

cessary contracts, deeds, or other instruments, authorizes him "generally to do all other acts and things for and in behalf of said company he may deem proper to further and protect their interests;" but this general power is followed by a proviso that Chute shall not be deemed authorized to sell the fee simple to any of the water power owned, or that might be acquired by the company.

Now, considering the broad grant of power by the charter, the provisions in it with reference to the election of an agent and his powers, and the broad terms of the resolution in pursuance of which the power of attorney was executed, it appears to me that there is no reasonable ground for saying that the agent had not, under his power of attorney, all the power the corporation had under its charter, except that he could not sell the fee simple of the water power. If the words of general authority in the power of attorney had been to do all other acts and things about or relating to the business of the company, or even to transact generally any or all business, or other business of the company, there might possibly have been a doubt whether the agent would have been authorized to make and indorse notes for the company; but the words are as broad as the words of the charter and of the resolution, "to do all other acts or things &c. that he may deem proper," &c.

I think it must be deemed that the corporation intended to give the agent discretionary power to do any act or thing it had power to do, except to sell the fee simple of the water power.

I am inclined to think the power of attorney should be considered to be general, and within the provision of the charter, declaring that if the power of attorney should be general, the company should be bound by the acts of the agent, "to whatever extent the said agent assumes to act."

Keeping in view the charter and the resolution, it appears to me that there is no reasonable ground for holding that the general authority by the power of attorney was intended

merely to authorize the agent to do all other acts and things necessary or proper in doing the acts and things previously specially authorized.

Chute was not only the agent, but also one of the three directors, and the secretary and treasurer of the company. One of the directors resided in the city of New York, and one half the capital stock was held by residents of New York. These facts, which appear from the evidence, tend to confirm the broad construction which I have given to the power of attorney, for they tend to show that the corporation would be likely to vest its agent with all the power that it had.

Third. But I question whether the corporation could set up, as against the plaintiffs, that the agent had not power to make the notes. The original notes, of which the notes in suit were renewals, were transferred to the plaintiffs before maturity, and for value. The plaintiffs were not parties to the transactions out of which the considerations for which the original notes were given arose. The plaintiffs were probably bound to take notice of the extent of the charter powers of the corporation, but I question whether they were bound to take notice of the extent of the powers given to the agent, in the absence of any thing suggesting inquiry. Considering the extraordinary general grant of power by the charter, and the provision of the charter authorizing the election of an agent, who might have and exercise all the power of the corporation, I think, in the absence of actual notice to the contrary or any thing to suggest inquiry, the plaintiffs had a right to assume that the agent had power to make the notes. (*See Royal British Bank* v. *Turquand*, 6 *Ellis & Blackburn*, 327, *cited and approved by Judge Nelson in Commissioners of Knox Co.* v. *Aspinwall et al.*, 21 *How. U. S. R.* 545, 546.)

If parties will procure and set their agent to work under a charter like this, I do not think they ought to be permitted to allege a want of power on the part of the agent, as to innocent third parties.

Fourth. I think it was error to refuse to allow the plaintiffs to prove that the agent was in the habit of giving notes for the company, and that he was the only one who gave notes for the company. I do not see how the corporation could say it had not notice of the giving such notes, when the agent was also a director, and secretary and treasurer. I think the evidence was admissible in view of the question as to the construction of the power of attorney, if not upon any other ground.

Upon the whole, I am of the opinion that the plaintiffs could have recovered on the notes in an action against the corporation; that they are evidence of debts owing by the corporation to the plaintiffs; and if so, it seems to follow that the defendant is liable in this action as a stockholder, by the eighth section of the charter.

I think the judgment should be reversed, and a new trial ordered, with costs to abide the event of the action.

Judgment affirmed.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *Sutherland,* Justices.]