CREBS v. CITY OF LEBANON.

(Circuit Court, W. D. Missouri, S. D. October 3, 1898.)

No. 136.

**1. MUNICIPAL CORPORATIONS—ORDINANCES—FAILURE TO RECORD.**

The validity of a city ordinance or resolution is not affected by the fact that, through an oversight of the clerk, it is not copied upon the city records.

**2. SAME—MODE OF ACTION BY COUNCIL—ORDINANCE OR RESOLUTION.**

It is immaterial that an ordinance required to be submitted for ratification to the electors of a city is submitted by a resolution of the council, instead of by an ordinance, where the resolution contains all the essentials of an ordinance.

**3. SAME—ESTOPPEL TO AVOID CONTRACT—IRREGULARITY IN ELECTION.**

Where a city election called for the purpose of voting on the ratification of an ordinance entering into a contract with a water company was called and held at a single voting place, as had been the custom for a number of years, instead of at separate places in each ward, the city cannot avail itself of such fact to defeat the contract after the result of the election in favor of the ordinance has been declared by the proper officers, and the company has been notified of such result, and has accepted the ordinance and fulfilled the contract on its part.

**4. SAME.**

A city cannot avoid a contract with a water company, which was ratified by its electors, after it has been accepted and performed by the company and has also been complied with by the city for a number of years, on the ground that a number of ballots cast at the election for the ratification of such contract were defective, where the rejection of such defective ballots would not have affected the result of the election.

**5. SAME—VALIDITY OF CONTRACT—BURDEN OF PROOF.**

Where a city defends an action against it on a contract on the ground that such contract is invalid because it created an indebtedness in excess of the limit fixed by the constitution of the state, it has the burden of proving all the facts necessary to establish such defense; and the court cannot find the contract invalid on that ground, where there is no evidence before it showing the assessed valuation of the city, which is made by the constitution the measure of its legal indebtedness at the time the indebtedness under the contract was created.

**6. SAME—INCOME APPLICABLE TO DEBTS—MISSOURI STATUTE.**

Rev. St. Mo. 1889, § 4977. which provides that a municipal corporation may be compelled by mandamus to levy a tax for the payment of a judgment against it, and that the whole amount raised within the constitutional limit may be applied in satisfaction of such debt, "except such amount as may be necessary to pay reasonable salaries allowed by law to the mayor, council, marshal, constable, attorney and a reasonable police force," fixes the amount which a city is entitled to expend from its revenues and income for current municipal expenses, as against a contract creditor; and it cannot defend against an action by such creditor on the ground that it levies taxes to the full constitutional limit, but has no surplus after paying the expenses of its government which can be applied on such debt, where it has expended money for purposes other than those enumerated in such statute.

**7. SAME—RIGHT OF ACTION FOR DAMAGES—INJURY TO STREET.**

Under a provision of a city ordinance granting a franchise to a street-railroad company, that "in case of any removal or change of trackage on any streets or crossings the grantee shall leave the same in as good condition as before such removal or change was made," the city has no

right of action for damages against one who purchases the rolling stock and rails of such company at foreclosure sale, and sells the same to another, who removes the rails, leaving the ties in the street.

Adiel Sherwood, for plaintiff.

J. W. Farris and J. D. Bovar, for defendant.

PHILIPS, District Judge. This is an action in assumpsit to recover on contracts for furnishing light and water to the defendant city. The defendant is a city of the fourth class under the General Statutes of Missouri. On January 5, 1891, the city by ordinance granted to the Lebanon Light & Water Company, a corporation constituted under the statutes of Missouri, the right for a period of 20 years to erect and operate a plant for making and furnishing electric light, and contracted thereby with said company for supplying the city during said term with light at a fixed price per annum. On September 1, 1890, the defendant by ordinance entered into a like contract with said company for supplying the city with water at a fixed price per annum. The electric light and water works were duly erected by the company, and lights and water were by it furnished to the defendant in accordance with the terms of said contracts; and payments for electric lights, as provided by ordinance, were made by the city up to about April 5, 1895, and payments were made for the water supplied up to some time in the year 1894, after which the city defaulted in said payments; and this suit is brought by plaintiff, a nonresident of the state, as successor in law and estate of the company, to recover the balance alleged to be owing and due under said contracts up to March 16, 1896. It was agreed by the parties at the trial that if, under the law, the plaintiff is entitled to recover, the amount due on account of electric lights is $1,183.83, and on account of water $1,431.17.

The defendant defends on the principal grounds: (1) That said contracts, if made, created an indebtedness against the city in excess of the limitations imposed upon the city by the state constitution; (2) that the election held by the electors of said city for ratifying said water ordinance was irregular, for the reason that on the 3d day of February, 1892, the city was divided into three wards, and that the said election was held in but one ward; (3) that the tickets first voted at said election contained only the words, "For electric light contract; yes—no," whereas the form of the vote prescribed by the ordinance contained the words, "For electric light contract and tax levy; yes—no," and that a part of the votes cast at said election contained only the words, "For electric light contract; yes;" and (4) that no ordinance was adopted by the board of aldermen submitting to a vote of the city the ratification of the waterworks ordinance. The answer further alleges that the defendant has annually levied and collected upon all the taxable property of the city 50 cents on the $100 valuation from the time said contracts were entered into, and that, after paying the necessary expenses of the city government, it has paid the balance of its income on account of said contracts, and that, after paying the necessary expenses of the city government, no revenue was left to apply to the payment of said debts.

A jury being waived by written stipulation filed herein, the cause was submitted on the pleadings and evidence to the court.

In respect of the contention made by the defendant that no ordinance was adopted by the city authorizing the contract for supplying it with water, it is sufficient to say that, in the stipulation of facts agreed upon and filed herein by the respective counsel, it is expressly agreed that Ordinance No. 86, of date September 1, 1890, printed on pages 93–99, among the published ordinances of the city, was "duly passed." And it is further stipulated "that thereafter an election was held in said city to vote upon said ordinance, and the same was duly adopted by a vote of 269 to 3, on September 16, 1890, of the qualified voters of said city; that said water ordinance and contract were accepted by said Lebanon Light & Water Company as thereby required." It is true, the stipulation provides that the "defendant does not waive any of its defenses as to the legality of the ordinance and contracts above mentioned"; but what defense can be made to the legality of an ordinance, where there was power in the governing board of the city, as in this instance, to adopt such ordinance, when it is admitted that the city council duly passed the ordinance? Even could the court go outside of this express admission, to inquire into the actual facts as developed by the proof offered by the defendant against the objection of plaintiff, they amount only to this: That the ordinance or resolution submitting said Ordinance No. 86 to a vote of the qualified electors of the city was in fact duly presented to the board of aldermen, and by them adopted, and duly signed by the mayor. But the only objection thereto rests on the fact that the ordinance, through an oversight or the neglect of the clerk of the board, was not spread upon the record book of the corporation. As said by the supreme court in Handley v. Stutz, 139 U. S. 422, 11 Sup. Ct. 532, 35 L. Ed. 232, "The failure to enter this resolution at the time it was adopted did not affect its validity, as most corporate acts can be proven as well by parol as by written instruments." Moss v. Averell, 10 N. Y. 449. It is likewise immaterial that the order of submission to a vote may have been in the form of a resolution, when the resolution contained the essentials of an ordinance duly passed by the board of aldermen, and signed by the mayor. Illinois Trust & Savings Bank v. City of Arkansas, 22 C. C. A. 171, 76 Fed. 272, 34 L. R. A. 518.

The objection as to the place of holding the election in question is predicated of the fact that in 1892 the city of Lebanon was divided into three wards, and instead of establishing voting places in each ward, and holding the election therein, the election on the water ordinance was, pursuant to notice, held alone at the county court house in the city, with the presence of the necessary complement of judges and clerks of all the wards. The evidence shows that all the elections held in the city prior to the one in question, for a number of years, were held and conducted at said court house, precisely as in this instance. The evidence further shows that after said election the city notified said company of the ratification of said ordinance by the requisite number of voters at said election, and thereupon the company notified the city of its acceptance of the provisions of the ordi-

nance, and proceeded to perform the contract thereafter up to the time of this controversy, and that the city thereafter recognized the existence and validity of the contract by paying the contract price for the water furnished. Under such circumstances, and where the legally constituted authority of the municipal government has passed upon and asserted the result of the election, as against the party so contracting with it and furnishing it with the necessary supplies called for by the contract, it is estopped from controverting the regularity of such election. Illinois Trust & Savings Bank v. City of Arkansas, supra; Brown v. Ingalls Tp., 30 C. C. A. 27, 86 Fed. 261.

It is further objected to said election that the tickets first employed contained only the words, "For electric light contract; yes—no," instead of the words, as required by the ordinance, "For electric light contract and tax levy; yes—no." The evidence shows that when the polls were first opened the tickets used contained only the words first above named, but after about 20 of them had been deposited the mistake was discovered, and thereafter the tickets properly prepared were voted. The evidence shows that the voting population of the city of Lebanon is only about 400; and as the returns showed that 269 votes were cast for the proposition, and only 3 against it, the rejection of the 20 irregular votes in no wise can affect the result. And, even if there was such irregularity, the city could not, in this collateral proceeding, after it had declared the result of the election, and acted thereon under the contract for a series of years, and received the benefit of the contractor's labor and supplies, go back of the returns. To hold otherwise would be to assert that a municipal corporation, contrary to the established rule, can take advantage of its own neglect and wrong. Artificial beings, clothed with the power to do certain acts and to determine when they are done, are, and should be, as much bound and concluded by their action and assurance as a natural person. In law, as in morals, there is in this respect no distinction.

The remaining and important question for decision is that of the limitation placed by the state constitution on the amount of revenue a municipal corporation may raise to meet its indebtedness. Section 12, art. 10, of the state constitution, declares that:

"No city or town," etc., "shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for state and county purposes previous to the incurring of such indebtedness."

The burden of developing the facts showing that the indebtedness incurred under these contracts exceeded the income and revenue provided for the city rests upon the defendant. The 5 per cent. on the value of the taxable property, it is to be observed, is to be ascertained "by the assessment next before the last assessment for state and county purposes previous to the incurring of such indebtedness." Without stopping to determine whether or

not this indebtedness accrued at the time of the making of the contracts, or in the years 1895 and 1896, when the defendant defaulted in the payment, it is sufficient to say that if the indebtedness accrued in 1895 the valuation would be based upon the assessment for state and county purposes made in the year 1892, and for that which accrued in 1896 upon the assessment for either 1892 or 1894. Or, if it be that the indebtedness accrued at the time of the making of the contracts, the valuation would have to be based upon the assessment of 1888. See Prickett v. City of Marceline (C. C.) 65 Fed. 471 et seq. There is no evidence before the court as to what was the assessment for state and county purposes as to property in said city for either of those years, and for that reason this defense must fail. The only tangible evidence presented by the defendant touching this issue is found in the testimony of the witness Stebbins, who was city clerk from June, 1895, up to the time he testified. He was inquired of as to the assessed valuation of the taxable property of the city for the year 1890, and he answered by saying, "I will read from the tax book for 1890, as returned by the county clerk to the city council." This is the only reference in his testimony to any returns from the assessment made by the county. He testified that the total value of the taxable property of the city for that year was $406,614.40, and that the total income from taxes collected that year was $2,201.60, to which should be added incomes from licenses; and he further testified that the total income on the levy from all sources, including the tax levy of 50 cents on the $100, for the year 1895, was $4,948.59. But whether or not this was based upon the assessment made for state and county purposes, and especially for the year 1892, does not appear from any evidence in the case. And, even if it were conceded that this income was based upon the returns of the proper assessment made for state and county purposes, I do not perceive how it would help the case of the defendant, as this amount of income would be amply sufficient to enable the defendant to meet its obligations under the contracts in question. The amount due on account of electric light, running through part of the year 1895 and the first quarter of 1896, it is agreed, amounts to the sum of $1,183.83; and for water furnished prior and up to April, 1896, the sum of $1,431.17; making a total of $2,615. Under the terms of the contract, the city was to pay $3,000 per annum for the electric light, and $420 for water; making an aggregate of $3,420. And, consequently, if this whole sum were deducted from the total income of the city for the year 1895, amounting to $4,948.59, it would leave a balance of $1,-528.59. The defendant tried the case upon the theory that it was competent for the city to spend its entire income derived from taxation and other sources upon itself, for what it deemed to be proper governmental expenses; but this is a misconception of the law. The state statute (Rev. St. Mo. 1889, § 4977) provides that an execution issued out of court against such city may be enforced by the writ of mandamus, compelling the levy for the satisfaction of the judgment, and that the whole amount within the constitutional limit may be applied to the satisfaction of such debt, "except such

amount as may be necessary to pay reasonable salaries allowed by law to the mayor, council, marshal, constable, attorney, and a reasonable police force of any such town or city." The supreme court of the state in Webb City & C. Waterworks Co. v. City of Carterville, 142 Mo. 101, 43 S. W. 625, has applied this section to the defense made in this case respecting the amount the city may expend out of its income for municipal purposes, and has limited such deduction to the payment of the salaries specified in said section. The evidence in this case shows that the only salaried officers of the city who are paid out of the revenues of the city are the marshal, who receives $175; deputy marshal, who received in the year 1895 the sum of $17.50; city attorney, $117; and assistant attorney, $100; and the city clerk, $91.35; and street commissioner, $141.50. Two of these officers to whom salaries were paid, to wit, street commissioner and city clerk, are not among the officers enumerated in the statute, and therefore should be excluded, which would leave the aggregate sum allowed by law to the designated officers of $409.50; thus showing that out of the revenue of 1895, and presumptively out of the revenue of 1896, there was ample revenue raised by the city, within the constitutional limitation, to pay the balance sued for in this action, together with interest thereon, based upon the facts given by the witness Stebbins as to the total income for the year 1895. Be this as it may, the witness Stebbins, when inquired of as to the assessed values of property in the city for the years between 1890, 1891, and 1895, stated that he did not have before him the data by which to determine this question,—thereby emphasizing the fact that the defendant failed to show what was the valuation of the assessment for state and county purposes for the proper year anterior to 1895 and 1896, and even anterior to the time when the ordinances were passed and the contracts in question were executed; and, therefore, in any legal view of the case as made out on the trial, this defense must fail.

The defendant also pleads in its answer a counterclaim for damages growing out of the following state of facts: The said company was authorized by the franchise granted it by the city, under Ordinance No. 83, adopted July 8, 1890, to construct a street railway along the streets of said city. Section 19 of this ordinance provided that "in case of any removal or change of trackage on any streets or crossings the grantees shall leave the same in as good condition as before such removal or change was made, and in as good condition as the balance of such street." The plaintiff, under foreclosure sale against the company, became the purchaser of the rolling stock and rails of said street-railway company, which he sold to a third party, who afterwards took up and removed the rails, leaving the ties on the street as theretofore. The claim of the defendant is that it was damaged thereby. Even if it were conceded that such counterclaim would lie against this plaintiff in this action, there is no reliable evidence to support it. By the mere removal of the rails from the ties, without disturbing the ties or the grade of the street, it is not perceivable why the condition of the street was not as good thereafter as it was with the rails lying

on the ties. Under said section 19, "in case of any removal or change of trackage on any streets" the duty was devolved upon the grantees of the franchise to leave the same in as good condition as before such removal or change was made. The plaintiff is not the grantee of the franchise, nor does it appear that he became the purchaser thereof; so that there would be no devolution of the terms of the contract upon him; and, certainly, as it does not appear that he removed the rails, or directed the same to be removed, no cause of action is presented against him, arising on the simple fact that a purchaser of the rails from him removed the same. In any aspect of the case, therefore, this claim is not supported by the law or any evidence. Judgment for plaintiff as prayed.