PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, as Trustee, etc., Appellant, *v.* KATHERINE HAUSLING, Respondent.

PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, as Trustee, etc., Appellant, *v.* HERBERT McNEILL, Respondent.

PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, as Trustee, etc., Appellant, *v.* SALLY SHERWIN, Respondent.

First Department, January 28, 1938.

*Arthur F. Driscoll* of counsel [*Edward J. Clarke* with him on the brief; *O'Brien, Driscoll & Raftery,* attorneys], for the appellant.

*Thos. Jefferson Ryan,* for the respondents.

COHN, J. Plaintiff, as assignee of a corporation known as 251 West 71st Street, Inc. (hereinafter referred to as the "corporation"), sues to recover rents alleged to be due from the defendants, Katherine Hausling, Herbert McNeill and Sally Sherwin, under leases made with the corporation. McNeill is president, director and stockholder of the corporation, and the other two defendants are stockholders. In 1924, the corporation built, and still owns, an apartment house located at 251 West Seventy-first street, New York city. It is a co-operative apartment enterprise. Eleven of the twenty-four apartments were sold to various tenants, including the three defendants, who thereupon became stockholders. Proprietary leases between the corporation and the defendants were made in February, 1925, and the terms of the leases, in each instance, are identical save for the necessary variances occasioned by the apartment leased and the number of shares of stock of the corporation which each tenant-owner acquired.

For rent each defendant agreed to pay "the yearly rent of One Dollar, payable annually in advance, and at a further rent each year ending January 31st, equal to that proportion of the amount of money required by the corporation during such year for the purposes next mentioned, which the number of shares of the capital stock of the Lessor, owned by the Lessee at the commencement of such year, bears to the total number of shares of stock of the Lessor then outstanding, it being understood and agreed that the Board of Directors of the Lessor shall by resolution adopted in or about the month of October of each year estimate the sum of money which, in their judgment, will be required by the Lessor

during the current or ensuing year, (in addition to its other prospective income for said year and the surplus, if any, earned during the preceding year) for the payment of all prospective expenses and outlays by the Lessor, including among other things the payment of taxes, assessments, water rates, insurance premiums, operating expenses, the cost of repairs, mortgage interest, mortgage amortization payments, a sinking fund for the payment of mortgage indebtedness, the payment of any other liens and the meeting of deficits in previous years, if any; * * * and that the same shall be payable in equal monthly payments in advance on the first day of each month during said year, and that such monthly payments of ' further rent ' are hereby reserved and shall continue to be so due and payable each month after said January 31st until the Board of Directors of the Lessor shall, in like manner, determine a superseding estimate."

Each lease is for a term of ninety-nine years and each recites the existence of a first mortgage in the sum of $260,000, its rate of interest of six per cent payable quarterly on the fifteenth day of January, April, July and October of each year, and its amortization requirements, including a payment of $11,000 for the year 1931.

Plaintiff is the successor trustee of the first mortgage. In June, 1932, it commenced the foreclosure action because of defaults in the payment of interest and taxes. A receiver appointed therein went into possession and managed the property until his discharge in November, 1934. In that month the corporation, by its president, the defendant McNeill, executed and delivered to plaintiff an assignment of rents " due or to become due " on the premises. It is upon this assignment that the actions are brought.

The complaints, which are similar, allege that, by resolution of the board of directors of the corporation adopted before July, 1932, the rent of these three defendants was fixed as follows: For McNeill $217.24 per month, for Hausling $211.52 per month, and for Sherwin $177.22 per month; and that said resolution is still in full force and effect. As these defendants had for a time paid rent to the receiver who was in possession prior to the date of the assignment of rents, judgment is demanded for rent due at the monthly rate aforesaid for the period beginning July 1, 1932, and ending October 1, 1936, less the amounts which defendants paid either to the receiver or to the plaintiff under its assignment.

Defendants admit the making of the leases and the occupancy of the apartments but allege that the rent for the year 1932 had been fixed at the rate of one dollar for each defendant by the

board of directors of the corporation in January, 1932, and that, up to the time of the commencement of the action, there was no determination by the board of directors modifying such resolution. Defendants also plead *res adjudicata* by reason of the disposition of summary proceedings brought against them by plaintiff and also by reason of the entry of an order denying a motion by plaintiff, thereafter made in the foreclosure action in the Supreme Court, which order was affirmed by this court (248 App. Div. 868), for the fixation of a reasonable rental of McNeill's premises from July 1, 1935, and of Hausling's from September 1, 1935.

At the trial of the action, defendants attempted to prove that in January, 1932, the board of directors of the corporation had adopted a resolution reducing the rent which the co-operative tenants were then paying, to one dollar per year. This they did by calling as a witness the defendant McNeill who, over objection, testified that, at an alleged meeting of the board of directors held in January, 1932, a resolution was passed reducing the rent of the co-operative tenants to one dollar per year. Defendant Sherwin's son and defendant Hausling's son-in-law testified that they attended a meeting of the stockholders of the corporation held in conjunction with the directors' meeting and that such resolution was in fact passed and thereafter approved by the stockholders. It was upon this testimony that the trial justice found that a resolution fixing the rental at one dollar per year had been duly adopted in January, 1932, as asserted by defendants, and that the rent so remained up to the time of the commencement of this action.

Neither the minutes of the meeting of the board of directors nor those of the stockholders' meeting were produced by defendants at the trial. No diligent efforts had been made to locate these records of the corporation. Apparently no endeavor had been made to secure the attendance as a witness of John B. Foster, who was secretary of the corporation in 1932 and who had custody of the records, and, so far as appears, no attempt had been made to secure his deposition.

The failure on the part of defendants to produce the record evidence of the resolution of the board of directors, which it is claimed fixed the rent at one dollar per year, is a suspicious circumstance which casts considerable doubt upon the testimony of McNeill and that of the other two interested witnesses who gave parol evidence of the proceedings of the directors' and the stockholders' meetings. While the proceedings of the board of directors or of the stockholders of a private corporation may be established by parol evidence, where minutes of the corporate proceedings are kept and are accessible, the record evidence is the more satis-

factory. (*Moss* v. *Averell*, 10 N. Y. 449, 454; *Sigua Iron Co.* v. *Brown*, 171 id. 488, 496; 1 Abbot's Trial Evidence [4th ed.], § 99; 26 Am. & Eng. Ency. of Law [2d ed.], 1005; 22 C. J. 1011, § 1294, tit. Evidence; Richardson on Evidence [4th ed.], § 669.)

Upon the whole record, we are of the opinion that there is no credible evidence to sustain defendants' contention that in January, 1932, or at any other time, the board of directors of the corporation fixed the rent of the co-operative tenants at one dollar per year and no more.

McNeill, in his testimony, claimed that the resolution was adopted under the following circumstances: " ' The resolution passed by the Board of Directors said a rent of $1 a year until further action was taken. The $1 a year rent was passed on the statement of the vice-president of Wood, Dolson Company, Mr. Quinlan, that there would be a surplus in his hands, and that the surplus from then on would be sufficient to cover it.' Do you recall having made that statement on March 5th? A. Yes."

The Mr. Quinlan referred to by McNeill was a former vice-president of Wood, Dolson Company, Inc., which, up to the time of the appointment of a receiver in the foreclosure action, was managing agent of the property. He had died prior to the time McNeill gave this testimony. What is of greater significance, however, is the fact that at the time the resolution was alleged to have been adopted, that is, in January, 1932, the real estate depression was at its worst, the corporation had defaulted under the terms of its first mortgage on November 1, 1931, by failing to pay (1) the quarterly interest of $3,079.50 then due, (2) the amortization on account of principal amounting to $2,750, and (3) taxes for the second half of 1931 of $4,284, aggregating, in all, the sum of $10,113.50. The corporation was also then apparently in default on its second mortgage of $60,000, and the evidence is that it had to borrow money each month from its agent to meet its current expenditures.

Each proprietary tenant by his lease had agreed to pay a yearly rental of one dollar and a further rent fixed by resolution of the board of directors to be adopted in the month of October of each year, based upon the sum of money required by the lessor during the current year for the payment of all prospective expenses, including interest, taxes, assessments and all other charges specifically set forth in the terms of the lease heretofore quoted. The rental thus fixed under the terms of the leases was not an arbitrary amount, but it was to be in sum adequate to meet the payment of all prospective expenses required to operate the apartment house.

In the light of all these facts, the testimony of McNeill, that Mr. Quinlan had told him prior to the alleged meeting in January, 1932, that there was a surplus in his hands, is inherently incredible. If such statement had in fact been made to McNeill, it is utterly improbable that McNeill could have believed it. McNeill was president and a director of the corporation and its moving spirit. He must certainly have known of the defaults which existed at the time the alleged resolution was adopted, and he must have been aware, too, that there could not have been a surplus. The testimony of McNeill, Sherwin's son and Hausling's son-in-law, three vitally interested witnesses, that the resolution had in fact been adopted, reducing the rental to one dollar per year, is, in view of the other evidence and in the absence of the minutes of the corporation, unworthy of belief. It is unnecessary to consider the question as to whether the resolution, if adopted, in view of the terms of the proprietary leases, would be a nullity on its face as a matter of law, as we are of the opinion that the finding by the trial court, that the resolution had in fact been passed, is contrary to the weight of the credible evidence.

We also believe that defendants' affirmative defenses of *res adjudicata* are without merit. In October, 1935, plaintiff commenced a summary proceeding against defendant McNeill for non-payment of rent for the months of July, August, September and October, 1935, at the rate of $125 per month. This rent was alleged to be due in accordance with the terms of the lease which McNeill had made with the receiver in 1932. Although the Municipal Court decided in favor of plaintiff, the Appellate Term dismissed the proceedings on the merits, holding that the tenant was not liable upon any lease with the receiver, in view of the fact that he occupied his apartment under a lease with the corporation. The dismissal was based upon an agreement made between the receiver and the tenant. There was no dismissal of any summary proceedings based upon the proprietary lease.

It is also claimed that the order in the foreclosure action, denying plaintiff's application to fix a reasonable rent for the apartment and the affirmance thereof by this court, was *res adjudicata* as to this action. The denial of plaintiff's application to fix a reasonable rental was largely a matter of discretion and in no respect estopped the plaintiff from asserting the claims made here. "A judgment here will not destroy or impair rights and interests established by the former judgment." (*Larme Estates, Inc.*, v. *Omnichrome Corp.*, 275 N. Y. 426, 431; *Marine T. Corp.* v. *Switzerland G. Ins. Co.*, 263 id. 139.)

The judgments should be reversed, with costs, with the direction that judgments be entered in favor of the plaintiff against the defendants for the respective monthly rentals as provided under their leases, with interest and costs, less the amounts which they had heretofore paid to the receiver in foreclosure or to the plaintiff as assignee, to be computed before an official referee.

MARTIN, P. J., O'MALLEY, TOWNLEY and DORE, JJ., concur.

Judgments unanimously reversed, with costs to the appellant, and judgments directed in favor of the plaintiff against the defendants for the respective monthly rentals as provided under their leases, with interest and costs, less the amounts which they had heretofore paid to the receiver in foreclosure or to the plaintiff, as assignee, to be computed before an official referee. Settle order on notice.