**SUGDEN, Collector of Internal Revenue, v. SHAFFER.**

**No. 59.**

Circuit Court of Appeals, Second Circuit.

Dec. 5, 1938.

Robert H. Wendt, of Rochester, N. Y., for appellant.

Helen R. Carloss, Sp. Asst. Atty. Gen., for appellee.

James W. Morris, Asst. Atty. Gen., Sewall Key and Donald J. Marron, Sp. Assts. to Atty. Gen., George L. Grobe, U. S. Atty., of Buffalo, N. Y., and Goodman A. Sarachan, Asst. U. S. Atty., of Rochester, N. Y., for claimant.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM.

We do not find it necessary to decide whether there was a provable claim against the bankrupt under § 1114(d) of the Revenue Act of 1926, 26 U.S.C.A. § 958(c), and Article 49 of Regulations 43: arguendo we shall assume that it was not liable. Nevertheless, Edic agreed with Brown, the deputy collector, that if Brown would make no effort to collect the tax from the members personally—a course which the officers rightly feared would disrupt the club—the club itself would collect them. The evidence of that agreement was substantially uncontradicted, and the judge was right to overrule the referee's finding to the contrary. The so-called "Waiver" did not indeed embody such an agreement, and it is hard to see why it was thought useful, unless for its avowed purpose—to cut off any claim for refund—but it by no means comprised all that the parties had agreed to.

The only question open is whether this agreement was ever ratified or accepted by the proper authorities of the bankrupt. Edic said that the president and treasurer approved it at the time when they signed the "Waiver": he had then explained the whole matter to them. He said further that it was the board of governors who directed him to make the payments, though perhaps by this he again meant only the president, the treasurer and the secretary. However that may be, he later said that "it" (which probably meant the "Waiver") "was brought" (up?) "at a number of meetings time and time again", at which were present "the Board and officers and Mr. Wickes". When Edic told "them" that the members would be sued, "the officers of the club didn't want that to happen * * * and they said they would go ahead and collect the tax for the government". Though all this is somewhat vague, it constituted prima facie an authorization not only by the bankrupt's officers, but by the whole board; and that was enough until something was introduced to meet it. The parties have stipulated that the minute books of the club contained nothing authorizing the board or any officer "to have the bankrupt assume payment of the tax;" but it is of course irrelevant to the validity of a corporate act, duly authorized, that no record of it is made in the corporate books. Handley v. Stutz, 139 U.S. 417, 422, 11 S. Ct. 530, 35 L.Ed. 227; Moss v. Averill, 10 N.Y. 449, 454. Nor is the absence of any mention of the contract enough, merely as evidence, to meet Edic's testimony. It is not in the least surprising that such a transaction should not be recorded; it was of no great moment anyway, and was a disagreeable necessity whose commemoration the board would probably not care to

458

perpetuate. The referee made no finding upon it and the judge was right to make his own.

Order affirmed.