WEBB CITY AND CARTERVILLE WATERWORKS COMPANY, *Appellant*, v. THE CITY OF CARTERVILLE.

In Banc, December 14, 1897.

142  101
s153  130
142  101
s153  128
163  253
142  101
98a  ¹677

1. **Cities:** CURRENT NECESSARY EXPENSES: ENFORCED PAYMENT OF DEBTS. Under section 4977, Revised Statutes 1889, the necessary current expenses of a city of the fourth class are restricted to the salaries of its officers and a reasonable police force. A waterworks company, therefore, that has, in conformity to an ordinance, supplied the city with water, is entitled to a judgment for the value of such service, and to collect such judgment by *mandamus*, and such judgment and the payment thereof can be postponed only to the payment of the salaries of officers and of a reasonable police force.

2. ————: ————: BONDS. The words "income and revenue provided for each year" do not include money arising from the sale of a city's bonds, which were sold by the city for the purpose of raising money to pay other bonds then outstanding; and the fact that a part of the money derived from the sale of the bonds has been by the city placed in its general expense fund, does not alter the case—that the proceeds of such sales are to be excluded in estimating the annual income and revenue of the city. Income does not mean money borrowed

*Appeal from Jasper Circuit Court.*—HON. THOMAS HACKNEY, Special Judge.

REVERSED AND REMANDED.

*Stewart, Cunningham & Eliot* and *Galen & A. E. Spencer* for appellant.

(1) The power given the mayor and the board of aldermen of the defendant city by section 4940, Revised Statutes of 1879, and by section 1589, Revised Statutes of 1889, "to prevent and extinguish fires," and to provide for the police, health and general welfare, includes the power to provide a supply of water. 1 Dillon, Mun. Corp. [4 Ed.], secs. 143–146; *Allen v. Taunton,* 19 Pick. 485; *Hunneman v. Fire District,* 37 Vt. 40; *Green v. Cape May,* 41 N. J. L. 45; *Van Secklen v. Burlington,* 27 Vt. 70; *Livingstone v. Pippen,* 31 Ala. 542; *Rome v. Cabot,* 28 Ga. 50; *Bluffton v. Studebaker,* 106 Ind. 129.    (2) The only limitations upon this power to supply water, or upon the mode of exercising that power, are such as have been imposed by the Constitution and statutes of Missouri.  Subject to these limitations the discretion of the mayor and board of aldermen is absolute and it can not be restricted by the courts.    1 Dillon, Mun. Corp. [4 Ed.]; secs. 94, 102, 73; *Page v. St. Louis,* 20 Mo. 136; *Brush v. Carbondale,* 78 Ill. 74; *Sheldon v. Center School District,* 25 Conn. 224; *Poillon v. Brooklyn,* 101 N. Y. 132.    (3) There is not, either in the Constitution or the statutes of Missouri, any limitation of this power to supply the city with water as long as the city does not thereby become indebted "to an amount exceeding in any year the income and revenue provided for such year."  Constitution of Missouri, article 10, section 12.  And the income and revenue mentioned in section 12 of article

10 of the Constitution is the income and revenue provided, not alone from taxation, but from all sources whatsoever. *Lamar Waterworks Company v. Lamar*, 128 Mo. 223. (4) The passage in 1889 of ordinance number 27, and the contract resulting from the acceptance of said ordinance by plaintiff's assignor, did not operate to create in that year, or in any one year, an indebtedness of the city for the total rentals for twenty years. No indebtedness was created within the meaning of the Constitution until the time when the water was actually supplied in each quarter of each year. *Saleno v. Neosho*, 127 Mo. 627; *Lamar, etc., Co. v. Lamar*, 128 Mo. 222; *Water Company v. Neosho*, 136 Mo. 507; *Dively v. Cedar Falls*, 21 Iowa, 233; *Grant v. Davenport*, 36 Iowa, 401; *Territory v. Oklahoma*, 37 Pac. Rep. 1094; *State McAuley*, 15 Cal. 454; *Koppicus v. Commissioners*, 16 Cal. 252; *Railroad v. Railroad*, 98 Ill. 429; *Weston v. City of Syracuse*, 17 N. Y. 112; *Garrison v. Howe*, *Ib.* 465; *Smith v. Dedham*, 144 Mass. 179; *Laycock v. City*, 35 La. Ann. 497; *City v. Woessner*, 58 Tex. 467. (5) If it were true that the validity of the plaintiff's claim depended upon the setting aside of enough of the income and revenue to pay the necessary expenses of the city government, then such necessary expenses are defined by section 4977, Revised Statutes 1889, to wit: "The reasonable salary allowed by law to the mayor, council, assessor, marshal, constable, attorney and a reasonable police force," and the circuit court erred in holding that all the expenditures which were actually made by the city, including therein many expenses not mentioned in said section, were necessary to the maintenance of the city government and being necessary defeated plaintiff's debt and contract. (6) The defendant having in 1892 sold its $4,000 bonds at par, and having used only $1,500 of those proceeds in taking up other bonds, and having

placed the $2,500 remaining in its general funds, said $2,500 became part of the income and revenue provided for the year 1892, and the court committed error in declaring and ruling that in ascertaining the total income and revenue said $2,500 should be excluded from consideration.

*McReynolds & Halliburton* for respondent.

(1) Did the city of Carterville have any authority at the time this contract was made to make it, or in other words, did the charter of the city give the council power to make such contract? The defendant contends that it did not; that the contract is *ultra vires* and void. R. S. 1879, sec. 4940; *St. Louis v. Bell Telephone Co.*, 96 Mo. 623; 1 Dill. Mun. Corp. [3 Ed.], sec. 89; *St. Louis v. McLaughlin*, 49 Mo. 562; *St. Louis v. Herthel*, 88 Mo. 128. (2) The power of the municipal authorities is exclusively confined to the limits prescribed by the charter and such ordinances as are passed in conformity thereto. *City v. Swope*, 79 Mo. 448; *Leach v. Cargill*, 60 Mo. 317; *Cape Girardeau v. Riley*, 72 Mo. 223; *Corrigan v. Gage*, 68 Mo. 544; *St. Louis v. Weber*, 44 Mo. 547. (3) Unless there is a legislative grant in the city charter conferring the power, it does not exist; for with the exception of certain incidental powers which are necessary to carry out express grants, the charter itself must furnish the measure of the authority to be exercised. *St. Louis v. Laughlin*, 49 Mo. 562. (4) The charter not giving the power to make this contract by express grant, and not being essential or indispensable in carrying out the powers granted or necessary to carry out any powers expressly granted, the city under the above authorities, had not the power. There is no provision in the charter for holding an election and taking the sense of the

people on this contract.  *Saleno v. City of Neosho*, 127 Mo. 627; *Indianapolis v. Gas Co.*, 66 Ind. 396; *Richmond Gas Co. v. Middleton*, 59 N. Y. 228; *Greenville Water Co. v. Greenville*, 7 So. Rep. 409; *Brenham v. Brenham Water Co.*, 67 Tex. 542; *McPherson v. Foster*, 43 Iowa, 48.  (5) A valid debt can not be contracted by the city without power to tax and pay.  *Citizens' Loan Ass'n v. Topeka*, 20 Wall [U. S.], 655; *Gould v. City of Paris*, 4 S. W. Rep. 650; *Gas Co. v. Brickweddle*, 62 Cal. 641; *Book v. Earrl*, 87 Mo. 246; *Arnold v. Hawkins*, 95 Mo. 569; *Black v. McGonigle*, 103 Mo. 192; *Barnard v. Knox Co.*, 105 Mo. 382; *State v. Columbia*, 111 Mo. 365; *Lamar W. & E. L. Co. v. Lamar*, 26 S. W. Rep. 1025; R. S. 1889, sec. 1947.  (6) The evidence showing beyond question that the hydrant rentals provided for in this contract could not be paid in any year out of the revenues provided for such year, the contract is absolutely void as in violation of the first clauses of section 12, article X of the Constitution of the State.

BURGESS, J.—This is an action by plaintiff as the assignee of one James O'Neil against defendant for the sum of $5,406.75, alleged to be due plaintiff from defendant for hydrant rental.  There was judgment for defendant in the circuit court, from which plaintiff appealed.

On or about the twenty-seventh day of July, 1889, the board of aldermen of the defendant city, by ordinance duly passed numbered 27, granted to said O'Neil, his associates and assigns, for the full period of twenty years from the completion thereof, the exclusive right to construct, erect and operate in said city a system of waterworks, and to supply the city and its inhabitants with water.  Under the contract defendant was to pay $50 per annum for the use of each hydrant

erected by O'Neil, which was to be paid in equal installments of $12.50 each after the expiration of each quarter, viz., on the tenth day of April, July, October and January of each year. O'Neil accepted the terms of the contract which was fully consummated, and this suit is brought by plaintiff who succeeded as assignee to all his interest in the contract. The works were constructed, the hydrants erected, and defendant had the use of the hydrants according to contract. No provision for the levy of a special tax to pay said hydrant rental was ever at any time made by the city.

The defendant answered the plaintiff's petition, substantially denying each and every averment thereof, and setting up the special defenses:

*First.* That at the time of the passage of ordinance number 27, defendant was, and for years prior thereto was, and ever since has been, levying a tax upon the property within its limits "to more than the full amount and extent authorized and permitted by the Constitution and laws of Missouri," and that all the revenue derived from such tax was and is required and used in paying the ordinary current expenses and charges of carrying on the city government outside of the indebtedness attempted to be created by said ordinance, and in paying past indebtedness created before it became a city of the fourth class; and that from such levy and collection defendant has no means or money to pay plaintiff's claim.

*Second.* That at no time since said ordinance was passed could the defendant, by the levy of the tax allowed by law, have raised the necessary funds to pay the debt so attempted to be created, or any part thereof, after paying its ordinary running expenses and keeping up its city government.

*Third.* That said ordinance attempted to create an indebtedness for the defendant city to an amount,

including existing indebtedness, exceeding in the aggregate five per centum of the value of the taxable property of the city; that defendant at that time had an outstanding indebtedness of over $5,000, and that the indebtedness attempted to be created by said ordinance and contract exceeded five per centum of the taxable property within defendant's limits.

*Fourth.* That the indebtedness attempted to be created by said ordinance and contract is more than five per centum of the taxable value of the property within defendant's limits, as shown by the State and county assessment for any year after the attempted creation of such indebtedness.

*Fifth.* That as to $3,331.75 of the debt sued for by the plaintiff defendant had issued to plaintiff its warrants on its treasurer, and that said warrants were delivered and accepted in payment of said indebtedness, and that plaintiff's remedy, if any, as to said amount, is by suit upon such warrants.

Trial by jury was waived, and the cause was tried by the court sitting as a jury.

It was admitted before the court that defendant, during all the transactions in question, was a city of the fourth class, having more than one thousand and less than ten thousand inhabitants. It was proved that during all the time in question the defendant had had the actual use of the hydrants.

Plaintiff tendered at the trial and offered to surrender to defendant six certain warrants of defendant, given for part of the water rental sued for, being warrants of numbers and dates following: Number 60, dated October 13, 1892; number 115, dated January 20, 1893; number 151, dated April 13, 1893; number 42, dated July 6, 1893; number 72, dated October 27, 1893; and number 127, dated January 4, 1894; and proved that said warrants were not taken in payment

of said rental, but were taken to be in payment of rental only when in fact said warrants should be paid. Plaintiff then proved the rentals sued for to have been due quarterly, as follows: *For the year 1892:* Third quarter, ending September 30, $512.50; fourth quarter, ending December 31, $512.50. *For the year 1893:* First quarter, ending March 31, $512.50; second quarter, ending June 30, $512.50; third quarter, ending September 30, $656.75; fourth quarter, ending December 31, $675. *For the year 1894:* First quarter, ending March 31, $675; second quarter, ending June 30, $675; third quarter, ending September 30, $675. Total, $5,406.75.

Defendant proved the assessed value of property within its limits, as per its tax books, to wit, real estate, personal, merchandise and insurance to have been, in 1891, $159,844; 1892, $453,134; 1893, $558,395; 1894, $643,012; and that the tax levy for all these years was fifty cents on the $100 for each year. Defendant then proved that the books of its treasurer for the years 1892, 1893 and 1894 showed receipts and disbursements as follows: For the year 1892, total receipts, $7,215.16, including $4,000, proceeds of the sale of bonds of the city, and disbursements, $6,881.50, including $1,500, bonds paid. For the year 1893, total receipts, $4,997.23, and disbursements, $5,222.10. For the year 1894, total receipts, $9,747.90, including $6,000, proceeds of sale of city bonds, and disbursements, $9,613.67, including $6,000 bonds and interest paid. What was the particular character or purpose of these disbursements, or by what authority they were made, was not shown, except as to the $1,500 in 1892 and the $6,000 in 1894, paid on bonds and interest due on bonds.

Over the plaintiff's objection, W. L. Wees was permitted to testify that he had examined the books of

the city clerk, and had figured up the total amount of receipts, as shown by those books, and by the treasurer's books, and had made a statement showing the amount of such receipts, and the amount of warrants issued, the amount of the warrants being obtained from the warrant stub book and the journal of the board of aldermen. That he has prepared a statement of those matters, which included also money received (as shown by the treasurer's books) from sale of bonds during said times. Defendant offered said statement as the result of the witness' investigations, and this statement was put in evidence over the plaintiff's objection. That statement shows receipts and warrants ordered for the years 1892, 1893, and 1894, as follows: In 1892, receipts including $4,000 proceeds of bonds sold, $6,930.41, instead of $7,215.16, as previously shown from the treasurer's books for 1892, and a total of warrants issued and bonds and interest paid, $6,493.02. For the year 1893 it shows receipts, $5,012.23, instead of $4,997.23, as shown by preceding statement from the treasurer's books, and a total of warrants, $5,341.78. For the year 1894 it shows total receipts, including $6,000 proceeds of bonds sold, $9,863.86 instead of $9,747.90, as shown by preceding statement taken from the treasurer's books, and it shows warrants ordered and payment of bonds and interest in 1894, $9,418.14. This statement shows no particulars or character of the alleged warrants or for what purposes issued—nor anything as to the nature of any payments, except $1,500 bonds paid in 1892 and $6,000 bonds and interest paid in 1894.

Defendant then proved that in October, 1890, it issued $1,500 bonds, and in July, 1891, $1,500 more bonds; that in October, 1891, it issued $1,500 bonds, with which the bonds of October, 1890, were taken up. That in 1892 it issued $4,000 bonds, $1,500 of the pro-

ceeds of which were used in taking up the issue of July, 1891, and that under an ordinance (ordinance 124) passed in November, 1893, it issued $6,000 of bonds, from the proceeds of which all its outstanding bonds, to wit, $1,500 issued in July, 1891, and $4,000 issued in 1892, with accrued interest, were paid. Ordinance number 124, under which this issue of $6,000 bonds was made, provides that "said city shall levy and collect a tax annually of fifteen cents on each one hundred dollars' valuation on all the taxable property of said city out of the tax rate allowed by law to be levied and collected on all taxable property of said city, with which to pay the interest on said indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof."

Defendant then introduced an abstract from the books of the city clerk showing warrants of the city of Carterville (excluding hydrant rentals) drawn for the years 1892, 1893 and 1894, inclusive. The total of warrants, exclusive of hydrant rentals, issued for the year 1892, was $4,117.37; for the year 1893, $3,157.93; for the year 1894, $2,363.14. Among other disbursements it appears that there was expended out of the funds of the city upon a cemetery and in the salary of a sexton therefor, in 1892, $283.75; in 1893, $55; in 1894, $40.10. Also, besides a city marshal paid at the rate of $40 per month, there was expended in the salary of a deputy city marshal in 1892, $385; in 1893, $266.50; and in 1894, $260. Also for curbing and guttering streets there was paid out of the city treasury, in addition to the street commissioner's salary in 1892, $371.75. Also for salary of a street commissioner there was spent in the year 1892, $328.50; in 1893, $357.75; in 1894, $144.65. Also for salary of a deputy street commissioner in 1892 there was spent $136. Also for insurance on buildings there was spent in the year

1892, $40.50; and in the year 1893, $42; and in 1894, $17.50. Also for a "road grader" there was spent in 1892, $235. It seems that the city was unable to pay its hydrant rental from its income and revenues from the time it first began to use the hydrants, and for that purpose, and to partially pay the expenses of the city government, it continued to borrow money until it had bonds outstanding aggregating the sum of $5,500, at the time it ceased to pay its hydrant rental.

Plaintiff asked and the court refused to declare the law to be as follows:

"1. Under the contract introduced in evidence—if the plaintiff has complied with the requirements and provisions thereof, as to furnishing water for use of defendant—the defendant became indebted to plaintiff on March 31, June 30, September 30, and December 31, respectively, of each year, for hydrant rental for the three months preceding each of said dates, at the rate of twelve and one half dollars for each hydrant furnished defendant by plaintiff under the terms of said contract; and if, at the time of incurring any such indebtedness, to wit, on any of the dates above mentioned, in any year from and including September 30, 1892, to and including September 30, 1894, the total income and revenue of defendant city then and thereafter provided for and collected during such year, had not been expended by said city, but there remained unexpended of such amount sufficient to pay such hydrant rental for the three months next preceding such date, the finding will be for plaintiff for all such quarters' hydrant rentals.

"2. If the contract introduced in evidence was made by plaintiff and defendant with the assent of two thirds of the voters of the city of Carterville, voting at an election called and held for that purpose, of which election there had been given fifteen days' previous

notice by publication in a newspaper published in said city of Carterville; and the indebtedness then and thereafter incurred under said contract did not, including existing indebtedness, in the aggregate exceed five per centum of the value of the taxable property in said city, as ascertained by the assessment next before the last assessment for State and county purposes, previous to the incurring of any indebtedness thereunder, the finding will be for the plaintiff.''

Plaintiff duly excepted to the action of the court in refusing its declarations of law.

At the request of the defendant the court declared the law to be as follows, to wit:

"The court declares the law to be that by the terms, 'necessary expenses of the city, to keep up its organization and perform the functions for which it is organized,' are the following:

"Pay of salaries of city officials.

"Keeping streets in repair.

"Publishing city ordinances.

"Expenses of city elections.

"Removal of nuisance.

"Board of prisoners and supplies for city jail.

"Cost of preparing tax books.

"Necessary supplies for city officials.''

The court of its own motion gave the following declaration of law, to wit:

"The court declares the law to be that the contract entered into between the city of Carterville and the plaintiff is valid and binding on the defendant, provided the court finds that the hydrant rentals mentioned in the said contract could be paid out of the income and revenue provided by the defendant for each year, after first deducting therefrom the necessary expenses for maintaining the city government; and if the court finds from the evidence that the income and rev-

enue provided by the defendant for each year for which plaintiff sues for hydrant rental, after deducting the necessary expenses of maintaining the city goverment for such year, was insufficient to pay the whole or any part of the hydrant rentals for the same year, the finding and judgment must be for the defendant.''

Thereupon the court found in favor of the defendant and made its written finding in the following words:

''The court finds from the evidence that the ordinance mentioned in plaintiff's petition was duly passed by the board of aldermen of the city of Carterville; that an election was duly held in said city on proper notice, on the day mentioned in the petition, and at the said election the said ordinance was approved and ratified by more than two thirds of all the voters voting at said election; that the plaintiff has complied with all the terms and conditions of said ordinance and put in additional hydrants when requested by said city; and has furnished the water to said city and furnished the city the use of the hydrants mentioned in the petition, during the times therein stated. The court further finds that excluding from consideration moneys received from the sale of bonds issued by said city, and excluding from consideration moneys paid by said city on its bonds, that the income and revenue provided by said city for any one year has not been sufficient to pay the whole or any part of said hydrant rental after the city has first paid its necessary, ordinary current expenses for the maintenance of the city government; that no provision for the levy of a special tax to pay the said hydrant rentals was made by the said city before or at the time of making the contract with plaintiff's assignor, James O'Neil, or before or at the time plaintiff furnished the city water under the said contract. And the court declares the law to be, from these facts,

Vol. 142 mo—8

that the ordinance passed by the board of aldermen and mayor and ratified by the voters of the city of Carterville, not having made provisions for the levy of a special tax to pay the hydrant rental which might thereafter become due to the plaintiff, the board of aldermen of the city of Carterville have no power to levy a special tax to pay said hydrant rentals, and the plaintiff must look alone to the annual income and revenue of the said city for each year to pay said hydrant rentals; and that the city has the right, and it is its duty, to first pay out of its said annual income and revenue, the ordinary expenses necessary to maintain the city government for each year, and as such ordinary annual expenses equal or exceed the annual income and revenue, the plaintiff is not entitled to recover."

By the declarations of law given and the finding of facts, it will be observed that all of the issues involved in the pleadings were found in favor of plaintiff, except that the income and revenue provided by the city for any one year, excluding moneys received from the sale of bonds issued by said city and moneys paid by the city on its bonded indebtedness, was not sufficient to pay the whole or any part of its hydrant rental, after the city had first paid its necessary and ordinary expenses for the maintenance of the city government. In fact it is admitted by counsel for defendant in their brief that the ruling of the court was as stated on all of the issues. Defendant took no appeal so that the only question to be considered is with respect to the issue ruled adversely to the plaintiff and upon which the case was decided against the company, that is, the sufficiency of the income and revenues of the city for the years in question derived from all its sources to pay its ordinary current expenses.

There was no request by either party for the court to state its finding upon the facts and law of the case,

so that in passing upon the questions involved resort may be had to the finding of facts by the court; the declarations of law asked by plaintiff and refused, the declaration of law given at the instance of defendant, and that which was given by the court of its own motion.

By the declaration of law given by the court of its own motion it was held that the contract between the city of Carterville and plaintiff is valid and binding on the defendant, provided the hydrant rental mentioned in the contract could be paid out of the income and revenues provided by the defendant for each year, after deducting therefrom the necessary expenses for maintaining the city government, but if insufficient to pay the whole or any part of the hydrant rentals for the same year, the finding and judgment must be for the defendant.    The finding of facts is in accord with that declaration of law.    By it the court finds that excluding from consideration moneys received from the sale of bonds issued by the city, and excluding from consideration moneys paid by the city on its bonds, that the income and revenue provided for the city for any one year, was not sufficient to pay the whole or any part of the hydrant rental after paying its necessary current expenses for the maintenance of the city government. The question then is, what constitutes such expenses? By the declaration of law given at the instance of defendant such expenses were held to include not only the salaries of the city officials, but expenses for keeping streets in repair, publishing city ordinances, expenses of city elections, removal of nuisance, board of prisoners and supplies for city jail, cost of preparing tax books, and necessary supplies for city officials; and as the different purposes for which such expenses were incurred were not specified in the declaration of law given by the court of its own motion nor in the finding

of facts, we can but conclude that all of the items mentioned in defendant's declaration of law were taken into account by the court in estimating the amount of the city's necessary current expenses for each year. What should be included in such current and necessary expenses is somewhat difficult to determine, unless that question is settled by section 4977, Revised Statutes 1889. That section provides that in case an execution shall be issued against any incorporated town or city, and returned unsatisfied in whole or in part for want of property whereon to levy, the chief officers of such city may be compelled by *mandamus* to levy, within the constitutional limits, assess and collect the annual taxes in such town or city from year to year as occasion may require, and order the same when collected to be paid to the execution creditor, his agent or assigns, except such amount as may be necessary to pay *the reasonable salary allowed by law to the mayor, council, assessor, marshal, constable, attorney and a reasonable police force of any such town or city.*

It will be seen by this statute that the necessary current expenses of such cities are restricted to the salaries of its officers and of a reasonable police force, and it would seem that the same rule should apply in an action to recover a judgment under the circumstances disclosed by the record in this case that would apply in proceeding to collect the judgment in the event of one being rendered. The items of expense that were improperly included by the court amounted to several hundred dollars each year, and but for the fact that they were included in the estimate of the current and necessary expenses of the city for each year, a different result would have in all probability been reached.

It was said in *Lamar W. & E. L. Co. v. City of Lamar*, 128 Mo. *loc. cit.* 202, that the words "income and revenue provided for such year, . . . . . . . do not mean

simply the revenue raised by a levy of tax on real and personal property; they include also the income derived from licenses and from all other sources." But this does not, we think, as is insisted upon by plaintiff, include moneys arising from the sale of its bonds which were sold by the city in 1892, for the purpose of raising money to pay $1,500 of its bonds which were then outstanding, and the remainder to pay other indebtedness, and the fact that the remaining $2,500 was placed by the defendant in its general expense fund does not alter the case. Income does not mean money borrowed, but in this instance means revenues derived by the city from all sources and upon all accounts. So that no error was committed by the court when estimating the annual income and revenues of the city, in excluding from its consideration moneys received from the sale of bonds issued by it, and moneys paid by it upon its bonds which were outstanding.

Under the circumstances there was no error committed in refusing the declarations of law asked by plaintiff.

It follows that the judgment must be reversed, and the cause remanded. It is so ordered. All concur.