WEBB CITY AND CARTERVILLE WATERWORKS COMPANY v. CITY OF CARTERVILLE, Appellant.

In Banc, December 19, 1899.

1. **Cities: EXPENSES: CONTRACTS.**   The necessary expenses for maintaining city government of a city of the fourth class are "the reasonable salaries allowed by law to the mayor, council, assessor, marshal, constable, attorney, and a reasonable police force of such city."   And after these are paid the city can apply the balance of the total income and revenue actually collected each year to the payment of hydrant dues under a waterworks contract, but not before.   But if the amount due under such contract exceeds the city's income, the contract is not void.   But the city is required to pay thereon, in discharge of all its dues and obligations under such contract, only the difference between its necessary expenses and its total income.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*McReynolds & Halliburton* for appellant.

(1) The first use to be made by a city of taxes collected is to maintain its organization and pay its ordinary, necessary running expenses. And the evidence showing the revenue for each year to be insufficient to pay its ordinary current expenses to maintain its organization and to pay these hydrant rentals, the contract with plaintiff is void as being in excess of the taxing power of the city. Dillon Mun. Corp. (4 Ed.) secs. 89, 100, 131, 136; Constitution, art. X, sec. 12; Citizen's Loan Association v. Topeka, 20 Wall. 655; Gould v. City of Paris, 4 S. W. Rep. 650; San Francisco v. Brickweddle, 62 Cal. 641; Brook v. Earl, 87 Mo. 246; Arnold v. Hawkins, 95 Mo. 569; Black v. McGuingle, 103 Mo. 193; Barnard v. Knox Co., 105 Mo. 392; Valparaiso v. Gardner, 49 Am. Rep. 424; Merrell R. L. Co. v. City of Merrell, 80 Wis. 358; Atlantic City Water Works Co. v. Reed, 50 N. J. L. 665; Grant v. Davenport, 36 Ia. 396; East St. L. v. E. St. L. Gas Co., 98 Ill. 415; Appeal of City of Erie, 91 Pa. St. 398; Clay Co. v. McLees, 115 U. S. 616; E. St. Louis v. Zebley, 110 U. S. 321; E. St. Louis v. Underwood, 105 Ill. 308; Weber v. Trawbell, 95 Ill. 427; E. St. Louis v. Amy, 120 U. S. 600. (2) The court should not for the purpose of validating this contract limit the necessary expenses to the payment of the officers provided for in section 4977, Revised Statutes 1889, as said section was never intended to be applied to a case of this kind, but only to a valid debt that is in judgment, not for the purpose of validating a contract so that a judgment could be recovered. That section leaves out the most important and necessary officers of a city to wit: City clerk and city collector, and would prohibit furnishing city officers the necessary supplies, maintaining a

calaboose or caring for prisoners and prevent the holding of an election for any purpose, prevent the publication of ordinances, which is necessary before they can take effect.

*Galen & A. E. Spencer* for respondent.

(1) Defendant had authority to contract for a supply of water. Webb City, etc., Co. v. Webb City, 78 Mo. App. 422; Saleno v. Neosho, 127 Mo. 627. (2) The only limitation on this power is found in Constitution of Missouri, article X, section 12, providing defendant must not become indebted "to an amount exceeding in any year the income and revenue provided for such year. (3) The only limitation against the right to contract indebtedness is found in the Constitution, and there no distinction is made between indebtedness for necessary running expenses and other indebtedness. Barnard v. Knox Co., 105 Mo. 382; Bank v. Douglas Co., 146 Mo. 42. But if any necessary running expenses are to be first deducted from the income and revenue provided for any year, before the constitutional test of the validity of the contract is applied (and as an addition to the constitutional limitation) then the court was right in following the provisions of Revised Statutes 1889, section 4977. Water Co. v. Carterville, 142 Mo. 101; State ex rel. v. Norvell, 2 Mo. App. Rep. 541. (4) If entitled to judgment for any quarter's hydrant rental, plaintiff was clearly entitled to five per cent interest thereon from maturity, under section 8 of the ordinance contract. Without this provision the rate of interest would be six per cent. Water Co. v. Neosho, 136 Mo. 498.

GANTT, C. J.—This action was commenced in October, 1894, to recover of the city of Carterville, a city of the fourth class under the laws of this State, hydrant rentals under a contract with said city. This is the second appeal in the case. The first will be found reported in 142 Mo. 101.

The waterworks were completed May 10, 1890, and the plaintiff commenced furnishing the city with water under its contract on May 20, 1890.    This action is to recover the rentals for the following quarterly periods according to section 69 of the ordinance.

For the three months beginning July 1, 1892, and
 ending September 30, 1892, 41 hydrants... $512 50
For the three months beginning October 1, 1892,
 and ending December 31, 1892, 41 hydrants.. 512 50
For the three months beginning January 1, 1893,
 and ending March 31, 1893, 41 hydrants.. 512 50
For the three months beginning April 1, 1893, and
 ending June 30, 1893, 41 hydrants........ 512 50
For the three months beginning July 1, 1893, and
 ending September 30, 1893, 54 hydrants.... 656 75
For the three months beginning October 1, 1893,
 and ending December 31, 1893, 54 hydrants 675 00
For the three months beginning January 1, 1894,
 and ending March 31, 1894, 54 hydrants.... 675 00
For the three months beginning April 1, 1894, and
 ending June 30, 1894, 54 hydrants........ 675 00
For the three months beginning July 1, 1894, and
 ending September 30, 1894, 54 hydrants.... 675 00

The answer of the city contains various defenses, but on the trial of the case only one defense was relied on, and that was that the contract was in excess of the taxing power of the city and void; that the city after levying the full amount of tax authorized by law and adding to it the revenue received from other sources, and deducting from the amounts so received the expense necessary to maintain the organization of the city, was unable to pay the hydrant rentals.

No question was raised as to the formal execution of the contracts; the furnishing of the water by the plaintiff as contracted and the use thereof by the city.

Section 6 of the ordinance contract provides for a payment by appellant of $50 per annum for each hydrant, and that "all hydrant rentals shall be paid after the expiration of

each quarter, viz.: on the tenth day of April, July, October and January of each year."

The circuit court made a finding of facts as follows:

It found that the total income and revenue of appellant from all sources provided for the year 1892, was $2,976.96, not including therein an unexpended cash balance of $238.20 on hand January 1, 1892. The court also found that the amount of money necessary to pay the reasonable salary allowed by law to the mayor, council, assessor, marshal, constable, attorney, and a reasonable police force of said city for the year 1892, was $1,425.65. This leaves a balance of $1,551.31. It also found that defendant had paid its hydrant rental for the first two quarters of 1892, amounting to $1,025. This deducted from the above balance leaves $526.31, to be applied on hydrant rentals, and this sum entered into the judgment as the rental for the last two quarters of 1892.

The court found said total income and revenue provided for 1893 to be $4,997.23, and the above expense for that year to be $1,279.05. This leaves a balance of $3,718.18, and the rental for the four quarters of 1893 being $2,356.75, that amount was included in the judgment as the rental of 1893.

The court found the said total income and revenue provided for 1894 to be $3,177.03, and the above expense for that year to be $1,071. This leaves a balance of $2,106.03, and the hydrant rentals for the three quarters of 1894 sued for being $2,025, that amount was included in the judgment as rental for said three quarters of 1894. These figures in fact give the total income and revenue actually collected each year, and the amount actually expended for the aforesaid purposes, and not the whole amount levied for all purposes for said year.

I. The controlling purpose of this appeal was to ask this court to reconsider and overrule its judgment rendered on the former appeal. On that occasion we ruled that the contract

between the city of Carterville and plaintiff was valid and binding, provided the hydrant rental mentioned in the contract, and sued for in this case, could be paid out of the income and revenues provided by the defendant for each year, after deducting therefrom the necessary expenses for maintaining the city government. [City of Valparaiso v. Gardner, 97 Ind. 1; Coy v. City Council, 17 Ia. 1; Grant v. Davenport, 36 Ia. 396.]

As to what were necessary expenses of maintaining the city government, we concluded in the absence of any other legislative declaration that those only specified in section 4977, Revised Statutes 1889, should have the preference, to wit, "the reasonable salary allowed by law to the mayor, council, assessor, marshal, constable, attorney, and a reasonable police force of any such city."

The only limitation on defendant's power to contract indebtedness is found in section 12, of article X of the Constitution of Missouri, which prohibits the city from becoming indebted "to an amount exceeding in any year the income and revenue provided for that year."

The Constitution does not in express language make a distinction between necessary running expenses and other indebtedness, yet when the nature and object of municipal corporations are considered, it must be obvious that such a distinction would suggest itself to the Legislature.

Municipal corporations are created by the State for the public good. They exercise by delegation from the State a portion of the sovereign power. The principal object of their creation is to act as administrative agencies for the State, and to provide for the police and local government of the different localities. They are charged with governmental authority, and civil, political and municipal duties are imposed upon them. "To enable them beneficially to exercise these powers and discharge these duties, they are clothed with the authority to raise revenues, chiefly by taxation, and subordinately

by other modes, as by fines and penalties.    The revenue of the public corporation is the essential means by which it is enabled to perform its appointed work.    Deprived of its regular and adequate supply of revenue, such a corporation is practically destroyed, and the ends of its erection thwarted."    1 Dillon on Mun. Corp. (4 Ed.), sec. 100.

It has been held in some courts of great ability that the supply of water is itself an item of current expenditure essential to the welfare of the municipality, but it was clearly within the province of the Legislature to distinguish also between these ordinary expenses, and prefer those for the support of the police and salaries of the necessary officers to enforce the powers conferred for the benefit of the State, but it is not the duty of the courts to add to these preferences.

As a mandamus is the form of execution resorted to for the enforcement of a judgment against a municipality, we are upon further consideration fully satisfied that we properly applied the exemptions named in section 4977, Revised Statutes 1889, to the contract in this case to ascertain whether there was sufficient revenue for each year's liability under this contract.

It appears that there was, and consequently the judgment of the circuit court must be and is affirmed.

The attempt is made on this appeal to exempt the collector's commissions.    The defendant assumed the burden of showing that the indebtedness exceeded the income and revenue, and furnished the figures which constitute the basis of the court's finding and if error crept in, the defendant and not the circuit court is responsible therefor.

The judgment is affirmed.

All concur, except *Sherwood, J.,* who is absent.