THE STATE ex rel. J. F. FURBY, Collector, v. CONTINENTAL ZINC COMPANY, Appellant.

### Division Two, July 27, 1917.

1. **CITY: Current Expenses: Payment of Debts of Prior Years.** Section 12 of article 10 of the Constitution gives to a city authority to levy the annual maximum rate of taxes for city purposes and to spend it all, as it sees proper, in paying its current expenses of all kinds, and it is beyond the power of the Legislature to divert those current funds to the payment of debts of prior years.

2. ———: ———: ———: **Extra Tax.** When a city contracts a valid debt for any year, then spends for other purposes its current funds for that year, leaving such debt unpaid, it has the power, if authorized by a two-third vote, to levy a tax in excess of the annual rate for city purposes, in order to pay that debt.

3. ———: **New Debt.** Where by way of a compromise of a judgment against a city for debts due a water company for hydrant rentals, bonds were voted by the people to pay the amount agreed upon, the debt evidenced by the bonds, if not a new debt, was a very different debt from that evidenced by the judgment.

4. ———: **Sufficiency of Tax Bill: Special Tax.** The law does not require that the back tax bill shall state a full and complete cause of action for the tax. It is not necessary to its validity that it show with specific clearness the purposes for which a "special tax" and a "sewer fund tax" were levied. The real matter for consideration is whether the tax imposed under section 12 of article 10 of the Constitution is included in the term "special" tax used in section 11.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*Spencer & Grayston* for appellant.

(1) The so-called back tax bill was not sufficient as to the heads "Special" and "Sewer Fund," to constitute prima-facie evidence. R. S. 1909, sec. 11498. (2) The city of Carterville, having less than 10,000 inhabitants, was confined to a levy of fifty cents on the one hundred dollars for all purposes mentioned as indicated in the so-called back tax bill. Waterworks Co. v. Lamar, 128 Mo. 188; Constitution, art. 10, sec. 11. (3) The only provision for a city of less than 10,000 inhabitants levying a tax rate in excess of fifty cents on one hundred dollars' valuation is where the people vote for a new indebtedness. Waterworks Co. v. Lamar, 128 Mo. 188; Constitution, art. 10, sec. 12; R. S. 1909, secs. 9544-9546. (4) The hydrant rental for which a "special" or additional levy was made should have been paid out of general revenues, that is funds arising out of the fifty-cent levy. Water Works Co. v. Carterville, 142 Mo. 106, 153 Mo. 132. (5) Submitting a bond proposition to the people for their approval, where the bonds are to be used to pay an old debt, does not authorize the city to make a levy in addition to the rate limited by section 11, article 10, Constitution, for the purpose of paying the bonds. Const., art. 10, sec. 12; R. S. 1909, sec. 9357.

*Allen McReynolds* and *Baird & Gass* for respondent.

(1) The tax bill was in proper form and sufficient. R. S. 1909, sec. 11498; Stanberry v. Jordan, 145 Mo. 381. It is not necessary to set out detailed information in the tax bill as to each classification. It is sufficient to classify each tax under some appropriate head. State ex rel. v. Burr, 143 Mo. 209. The duly certified tax bill was prima-facie evidence that the amount claimed was "just and correct." State ex rel. v. Ross, 93 Mo. 126; State ex rel. v. Maloney, 113 Mo. 370. And when the tax bill is introduced, it then devolves upon the defendant to show any omissions, insufficiencies, or defenses. State ex rel. v. Fullerton, 143 Mo. 686; State ex rel. v. Cun-

ningham, 153 Mo. 642; State ex rel. v. Vogelsang, 183 Mo. 22. (2) The city had the right with the assent of two-thirds of the legal voters to vote bonds for the purpose of paying the indebtedness represented by a judgment against it. Sec. 9355, R. S. 1909; Sec. 12, art. 10, Constitution. (3) Whenever the city was confronted by a judgment debt it had the right to arrange for the payment of that debt by a bond issue. Sec. 9355, R. S. 1909. Such arrangement was valid so long as the indebtedness did not exceed the five per cent limit and was incurred with the consent of two-thirds of the voters. Sec. 9355, R. S. 1909; Sec. 12, art. 10, Constitution. Whenever two-thirds of the voters consented to a funding of the judgment debt in such a manner, the source of that debt became immaterial. (4) Sec. 9355, R. S. 1909, is constitutional and valid. The interpretation of this section and section 12 of article 10 of the Constitution urged by appellant is not sound and is not supported by decisions. Waterworks Co. v. Lamar, 128 Mo. 188; State ex rel. v. Wabash Ry. Co., 169 Mo. 563; Evans v. McFarland, 186 Mo. 724; State ex rel. v. Thompson, 211 Mo. 64; Trust Co. v. Pagensticker, 221 Mo. 128.

ROY, C.—This is a suit for city taxes on the southeast fourth of the northwest quarter of section 21, township 28, range 32, in Carterville. There was a judgment for plaintiff, and defendant has appealed to this court, constitutional questions being involved.

In 1889 the city of Carterville, then and now a city of the fourth class and having a population over a thousand and less than ten thousand, entered into a contract with one O'Neil, by which it agreed to pay him for hydrant rentals for its supply of water, at the rate of fifty dollars a year for each hydrant. That contract was approved by a two-thirds vote at an election held for that purpose, but there was nothing in those proceedings authorizing the city to become indebted beyond its annual income for any one year or to levy a special tax to pay the hydrant rentals.

O'Neil assigned his contract and the waterworks to the Webb City & Carterville Waterworks Company, which continued to supply the city with water under the contract.

The hydrant rentals went unpaid as follows:

For last half of the year 1892 ................ $1025.00
For 1893 .................................... 2356.75
For first three-fourths of 1894 ............... 2025.00

$5,406.75

The waterworks company sued for that amount. The trial court held that the city had no power to become indebted for any year beyond its annual revenues without being so authorized by a two-thirds vote, and that the city had not been so authorized. It further held that the city, after paying the ordinary current expenses of the city government for each of those years, had no funds with which to pay the hydrant rentals. It gave judgment for defendant in that case.

On appeal to this court that judgment was reversed and the cause remanded. See Waterworks Co. v. Carterville, 142 Mo. 101, where all the facts including the judgment of the trial court are set out. This court, in effect, held that the city could not by the proceedings above mentioned become indebted in any year beyond its annual revenues. It further held that such annual revenues should have been applied first to the payment of the salaries of the city officers and the expenses of policing the city, and that all the balance of each year's revenues should have been applied in payment of the hydrant rentals for each year respectively.

The trial court, in accordance with that opinion, took an account and rendered judgment in favor of the plaintiff therein for $4908.06. On appeal that judgment was affirmed. [See 153 Mo. 128.]

Following that judgment, there was a compromise between the parties, the exact terms of which are not shown. In pursuance of that compromise bonds were issued to pay that judgment, the proposition to issue the

bonds being approved by a two-thirds vote at an election held for that purpose.

The taxes herein sued for are for the years 1905 to 1909 inclusive as follows:

Total for general fund for those years .........$351.00
Total for special fund for those years .......... 177.00
Total for sewer fund for 1907 to 1909 inclusive 182.04

$710.04

as shown by the back tax bill filed with the petition and put in evidence by the plaintiff.

The taxes for the general fund were levied at the full annual rate of fifty cents on the hundred dollars' valuation.

On the trial of this case the plaintiff put in evidence the back tax bill showing the above taxes and rested. The defendant objected to the items of taxes under the heads "special" and "sewer fund." The grounds of the objection to the special taxes and sewer fund taxes was that the back tax bill did not show for what purpose said taxes were being levied and collected.

In connection with the trial the following agreements were made:

"It is agreed that the items in the column headed "Special" were levied to pay interest on and to create a sinking fund to pay the principal of bonds issued for the purpose of paying a judgment in favor of the Webb City and Carterville Water Company based upon a compromise of the indebtedness claimed to be due for hydrant rental at a yearly rate payable quarterly and which was in default before the judgment was obtained, and consequently before the bonds were issued and that the bonds were issued in an amount equal to the judgment and this is to include the item of $18.50, which plaintiff states was levied for the same purpose for the year 1907.

"By this agreed statement the defendant does not waive any objection to the petition or to the tax bill."

Also the following:

"In addition to the facts heretofore agreed upon, it is agreed that the judgment for hydrant rental mentioned in the first agreed statement of facts, resulted from the litigation reported in Water Works Company v. Carterville, 142 Mo. 101, and again in 153 Mo. 128; that the hydrant rental ordinance or contract referred to in 142 Mo. was submitted to the voters of the city of Carterville for ratification, as stated in that opinion, and that the same was ratified; that in the ordinance so submitted for ratification, no provision was made for the levy of a special tax to pay the hydrant rental therein provided for; that the ballot used in said election is not procurable; that after the affirmance of the judgment in favor of said Water Company by the Supreme Court in the opinion in 153 Mo., the city held an election to vote bonds for the purpose of paying off the judgment, the exact amount of which was then determined by a compromise, the Water Company making some concessions as to the amount; that the question of issuing the bonds for the purpose of paying the judgment was submitted to the voters and the required majority voted in favor of the issuance of said bonds; that the levy of taxes was thereafter made for the purpose of paying the interest and creating a sinking fund for the payment of said bonds; that defendant concedes that in the bond election the forms of the law were complied with, its objection to the levy being that the voting of these bonds for the purpose of paying an existing judgment debt was not an increase of the indebtedness of the city such as to authorize the levying of a tax in addition to the taxes provided for general purposes in section 11, article 10, of the Missouri Constitution, or that the same was not an increase of the indebtedness of the city such as is contemplated by section 12 of said article.

"It is understood that by the making of this agreed statement, the defendant does not waive its objection to the sufficiency of the petition, or to the sufficiency and competency of the tax bill in evidence. Defendant expressly reserves the right to urge those objections."

The judgment was for the full amount of said taxes.

I.   Appellant contends that the city was without power to levy any tax to pay the bonds and the interest thereon beyond the levy of the annual rate of fifty cents on the hundred dollars' valuation.   The sub-

Levy to Pay Debts.· stance of its contention is that the debt of the city was incurred without any two-thirds vote authorizing the incurring of a debt beyond the annual revenues of the city, and that the debt, being thus incurred without such vote, could not later be validated by the vote in pursuance of the  compromise. In other words, that the vote must precede the creation of the debt, and can not validate a debt already created.

Section 12 of article 10 of our  State  Constitution provides two ways in which a city may become indebted;

1.   It may, during any year, without any vote of the people, incur debts to an amount not exceeding the revenue provided for such year.

2.   By a two-thirds vote it may become indebted in amount not exceeding five per cent. of its assessed valuation.

The city, under the first head above mentioned, clearly had power to contract for its supply of water to such extent for each year as could be paid for out of its annual revenue for such year.

It seems that the city, after contracting for its water supply, spent its revenues for other things and left the water bills unpaid.   The water company sued, and after thorough litigation, the judgment was recovered and affirmed.   It was so affirmed on the theory that the city had made its contract in pursuance of the first power above mentioned under the Constitution.   The  question  then arises, When a city contracts for anything (water for instance) within the limits  of  its  annual  revenue,  then spends that revenue for other things, must it pay· the water bill out of the general funds realized by the levy of the "annual rate" for a subsequent year or years, or can it levy a special tax for the purpose.

Prior to 1875 there was no constitutional limitation on the power of a county or city to incur debts.  Revised

272˙ Mo.—4

Statutes 1835, page 153, section 7, provided: "All county warrants shall be received in payment of taxes, fines, penalties and forfeitures accruing to the county." In State ex rel. v. Payne, 151 Mo. 663, it was held that such statute was invalidated by the Constitution of 1875, and that the current revenues of a county could not be diverted to the payment of warrants of previous years until after all current expenses of the county for the years were paid. It was there said if such division of the county revenues should be allowed, the current bills would go unpaid and there would result "a complete suspension of the business affairs of a county."

The General Statutes of 1865, page 650, section 77, provided: "Whenever an execution, issued out of any court of record in this State against any incorporated town or city, shall be returned unsatisfied, in whole or in part, for want of property whereon to levy, such court, at the return term or any subsequent term thereof, may, by writ of mandamus, order and compel the chief officer, trustees, council and all other proper officers of such city or town, to levy, assess and collect a special tax to pay such execution and all costs."

That section, as since amended, is section 2254 of our Revised Statutes, which reads:

"Whenever an execution, issued out of any court of record in this State, against any incorporated town or city, shall be returned unsatisfied, in whole or in part, for want of property whereon to levy, such court at the return term or any subsequent term thereof shall, by writ of mandamus, order and compel the chief officer, trustees, council and all other proper officers of such city or town, to levy, assess and collect the annual taxes in such town or city from year to year, as occasion may require, within the constitutional limits, and order the same, when collected by the proper officer or officers, to be paid to the execution creditor, his agent or assigns, except such amount as may be necessary to pay the reasonable salary allowed by law to the mayor, council, assessor, marshal, constable, attorney and a reasonable police force of any such town or city."

The constitutionality of that statute has never been discussed in any decided case. But, if the Legislature cannot compel a county to pay warrants of prior years out of its current revenues leaving current bills unpaid, how can it compel a city to devote all its current revenues, except the part necessary to pay salaries of its officers and the police, in payment of old debts? How long could a city exist and perform its functions as such under such conditions?

We hold that the above-mentioned sections of our State Constitution are intended to give the city authority to levy the annual rate for city purposes and to spend it all if it sees proper, in paying its current expenses of all kinds, and that it is beyond the power of the Legislature to divert those current funds to the payment of debts of any kind of prior years.

We further hold that when a city contracts a valid debt for current expenses in any year, then spends for other purposes its current funds for that year, leaving such debt unpaid, the city has the power to levy a tax in excess of the annual rate for city purposes, in order to pay that debt. The power of the city is coextensive with the rights of a creditor. The creditor has the right to insist that his valid claims shall be paid. He is not entitled to be paid out of the current funds raised by the levy of the annual rate for city purposes, for that would be to take away the city's means of existence. It results that the creditor has the right to demand that the debt be paid out of the current funds if the city has enough of it left over after payment of current expenses, or by a levy of a tax over and above such annual rate. The facts in this case show that the city levied its full annual rate, and, in addition thereto, levied this special tax to pay these bonds. It was within its right and duty in so doing.

II. In Conner v. Nevada, 188 Mo. 148, it was held that the constitutional limitations on the indebtedness of cities do not relieve the city from liability in actions *ex delicto*.

In State ex rel. v. City of Neosho, 203 Mo. l. c. 82, it was said:

"The contract in question provides for the creation of a special and particular fund without resorting to the power of public taxation; and the waterworks company and Smith, its assignee, may look alone to that fund in the first instance—what might happen if the city tortiously misappropriated and dissipated that fund, we need not inquire. Such acts might (or might not) render the city liable as for a tort; and the liability for torts is not one within the constitutional provision under consideration. [Conner v. City of Nevada, 188 Mo. 148.] But that question is not here, and, therefore, is not decided."

*Bonds a New Debt*

Now in this case the city, as above stated, after making the contract for water, spent the funds applicable to the payment for that water for other purposes. It may be that it was liable *ex delicto* for such misappropriation. We will not decide that question. But it should be remembered that, according to the agreed facts, the city and the water company settled all these perplexing questions by the compromise under which the bonds were issued, such issue having been authorized by a two-thirds vote at an election called for that purpose. If the debt evidenced by the bonds was not a *new* debt, it was certainly a very different debt from that evidenced by the judgment for the payment of which they were issued.

III. Appellant insists that the back tax bill does not show with sufficient clearness the purpose for which the "special" taxes and the taxes marked "sewer fund" were levied.

In Lamar W. & E. L. Co. v. City of Lamar, 128 Mo. 188, l. c. 215, it was said:

"The tax authorized by section 12 is not therein called a 'special' tax, but an 'annual tax.' Mere names, however, are of slight weight in such an investigation. The real inquiry should be whether a tax imposed under section 12 can, upon due consideration of the practical

ends in view in these sections, be held to be included by the term 'special' tax in section 11, within the intent of the Constitution.''

Taxes, like roses, are about as sweet under one name as another. The law does not require that the back tax bill shall state a full and complete cause of action for the taxes.

The judgment is affirmed. *White, C.,* concurs.

PER CURIAM: The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.